IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| Julio Cesar Sanchez-Acosta, | ) | |
| | ) | |
| *Petitioner-Plaintiff,* | ) | 1:18-cv-872-LO/IDD |
| | ) | |
| v. | ) | |
| | ) | **PETITION FOR** |
| Jefferson B. Sessions, III, in his official | ) | **WRIT OF HABEAS CORPUS** |
| capacity as the *Attorney General*; Kirstjen | ) | **AND** |
| Nielsen, in her official capacity as the | ) | **COMPLAINT FOR INJUNCTIVE AND** |
| *Secretary, Department of Homeland* | ) | **DECLARATORY RELIEF** |
| *Security*; Thomas D. Homan, in his official | ) | |
| capacity as the *Acting Director*, | ) | |
| *U.S. Immigration and Customs* | ) | |
| *Enforcement*; Russell Hott, in his official | ) | |
| capacity as the Field Office Director, | ) | |
| *Washington Field Office Director*, *U.S.* | ) | |
| *Immigration and Customs Enforcement*; | ) | |
| and Jeffrey Crawford, in his official | ) | |
| capacity as *Warden*, *Farmville Detention* | ) | |
| *Center, Immigration Centers of America-* | ) | |
| *Farmville*, | ) | |
| | ) | |
| *Respondents-Defendants.* | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

1. Petitioner-Plaintiff, Julio Cesar Sanchez-Acosta ("Petitioner" or "Mr. Sanchez-Acosta"),

   petitions this Court to issue a Writ of Habeas Corpus ordering his immediate release from

   custody. On May 15, 2018, an Immigration Judge granted Mr. Sanchez-Acosta

   withholding of removal, a statutory immigration benefit similar to asylum, based on a

   finding that he would likely suffer persecution if returned to his home country of El

   Salvador. Individuals granted withholding of removal are protected from removal to a

specific country and permitted to remain lawfully in the United States and to obtain

employment authorization.

2.  Despite the fact that Mr. Sanchez-Acosta has been granted relief by an Immigration

Judge, Immigrations and Customs Enforcement ("ICE"), an agency within the U.S.

Department of Homeland Security ("DHS"), has continued to detain Mr. Sanchez-Acosta

and has stated that he will not be released for an additional ninety-day period.

3.  ICE has asserted with respect to other similarly situated persons in immigration detention

that the agency has adopted a policy or practice of continuing to detain individuals

granted withholding of removal for ninety days, even when there is no reasonable

likelihood of deportation.

4.  As set forth below, this ICE policy or practice directly and adversely affects Mr.

Sanchez-Acosta and violates the Immigration and Nationality Act ("INA"), regulations

that implement the INA, and Mr. Sanchez-Acosta's constitutional right to due process.

5.  Accordingly, Mr. Sanchez-Acosta requests that the Court grant his petition, declare that

his continued detention is unlawful, and order Respondents-Defendants ("Respondents")

to release him from detention immediately.

## CUSTODY

6.  Mr. Sanchez-Acosta has been in the custody of ICE since November 16, 2017. He has

been and remains detained within the area of responsibility of the ICE Enforcement and

Removal Operations ("ERO") Washington Field Office located in Arlington, Virginia.

7.  Currently, Mr. Sanchez-Acosta is detained at the Farmville Detention Center located in

Farmville, Virginia. This detention facility is operated by a private, non-governmental

company under a contract with ICE.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction pursuant to Art. I, § 9, cl. 2 of the United States Constitution; 28 U.S.C. §2241 (the general grant of habeas authority to the district courts); 28 U.S.C. §1331 (federal question jurisdiction); and 28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act).

7.    The federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas claims by noncitizens challenging the lawfulness or constitutionality of their detention by DHS. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Aguilar v. Lewis*, 50 F.Supp.2d 539 (E.D. Va. 1999).

8.    This action also arises under the Immigration and Nationality Act of 1952 ("INA"), as amended, 8 U.S.C. § 1101 *et seq.,* the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the Due Process Clause of the Fifth Amendment to the United States Constitution.

9.    The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. §702.  Respondents' prolonged detention of Mr. Sanchez-Acosta and their policy or practice of continuing his detention for an additional ninety days after a grant of withholding has severely and adversely affected Mr. Sanchez-Acosta's liberty and freedom.

10.    Respondents' actions to remove Mr. Sanchez-Acosta constitute "final agency action" reviewable under the APA.  5 U.S.C. § 704; *Romero v. Evans*, 280 F.Supp.3d 835, 847 (E.D.Va. 2017) ("In agency law, finality is generally achieved when an action both

"marks the consummation of the agency's decision making process" and also determines legal rights and obligations."), *citing Bennett v. Spear*, 520 U.S. 154 (1997).

11. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*; the All Writs Act, 28 U.S.C. § 1651; and Fed. R. Civ. P. 57 and 65.

12. Venue is proper under 28 U.S.C. §1391(e) because Mr. Sanchez-Acosta is currently detained at the Farmville Detention Center in Farmville, Virginia, within the jurisdiction of the Eastern District of Virginia. 28 U.S.C. § 2241(d).

## THE PARTIES

13. Petitioner Julio Cesar Sanchez-Acosta is a native and citizen of El Salvador. He most recently entered the United States in May 2016. He has a 19-year-old daughter and a U.S. citizen granddaughter living in the United States. Before his detention on November 16, 2017, Mr. Sanchez-Acosta was the primary income provider for these family members. Respondents are currently detaining Mr. Sanchez-Acosta at the Farmville Detention Center, controlled and operated by the company Immigration Center of America – Farmville, in Farmville, Virginia.

14. Respondent Jefferson B. Sessions III is the Attorney General of the United States. Pursuant to 8 U.S.C. § 1226(a), as the head of the U.S. Department of Justice, of which the Executive Office for Immigration Review is an office, Mr. Sessions and his designees are authorized to release noncitizens on bond. He is sued in his official capacity.

15. Respondent Kirstjen Nielsen is the Secretary of the Department of Homeland Security ("DHS"). Ms. Nielsen and DHS have supervisory control over Immigrations and Customs Enforcement, the agency that detains Mr. Sanchez-Acosta. She is sued in her

official capacity.

16. Respondent Thomas D. Homan is the Acting Director of Immigration and Customs Enforcement ("ICE"), U.S. Department of Homeland Security. Mr. Sanchez-Acosta is detained under the authority of Mr. Homan. He is sued in his official capacity.

17. Respondent Russell Hott is the Field Office Director of the ICE Enforcement and Removal Operations Washington Field Office.  Mr. Sanchez-Acosta is detained under the authority of Mr. Hott.  He is sued in his official capacity.

18. Respondent Jeffery Crawford is the Warden of the Farmville Detention Center, which is owned and operated by ICA–Farmville, and is the facility at which Respondents have detained Mr. Sanchez-Acosta. ICE contracts with the Farmville Detention Center to detain immigrants. Accordingly, Mr. Crawford is the immediate custodian of Mr. Sanchez-Acosta. He is sued in his official capacity.

## STATEMENT OF THE CASE

19. Mr. Sanchez-Acosta is a citizen of El Salvador currently detained at the Farmville Detention Center in Farmville, VA who was granted withholding of removal on May 15, 2018 by an Immigration Judge at the Immigration Court in Arlington, Virginia, pursuant to 8 U.S.C. § 1231(b)(3). Mr. Sanchez-Acosta applied for asylum and withholding of removal after gangs in El Salvador killed his father and two brothers, threatened and shot at him, and attacked a cousin with gasoline and fire. Mr. Sanchez-Acosta fears being killed if returned to El Salvador on account of his family ties.

20. Withholding of removal is a form of immigration protection similar to asylum that prohibits the government from removing an immigrant to a particular country because he has demonstrated that he will be persecuted on account of a protected ground if removed

to that country. An Immigration Judge granted Mr. Sanchez-Acosta's application for withholding of removal sixty days ago and at the same hearing, the Department of Homeland Security waived appeal.  See <u>Exhibit A</u>, Immigration Judge Order (Judge noted DHS waived appeal). Thus, the order became administratively final on May 15, 2018. *See* 18 U.S.C. § 1231(a)(1)(B)(i) ("the removal period begins on . . . the date the order becomes administratively final").

21.    Since his arrest by DHS on November 16, 2017, Mr. Sanchez-Acosta has been and remains detained at the Farmville Detention Center in Farmville, Virginia. Mr. Sanchez-Acosta has been detained thus far during the pendency of his immigration court proceedings for 240 days.

22.    Respondents have stated to counsel for Mr. Sanchez-Acosta that it is DHS "policy to hold Mr. Sanchez for the entirety of the removal period" following the final order granting him withholding of removal. Attempts by Mr. Sanchez-Acosta to obtain more information about when he could expect to be released from detention despite prevailing on his claim have resulted in similar statements from ICE officials. A written statement provided to Mr. Sanchez-Acosta by his Deportation Officer indicates August 13, 2018 as his release date. August 13, 2018 is ninety days from the date the Immigration Judge's order became final.

23.    The "removal period" to which Respondents refer is contained in 8 U.S.C. § 1231(a)(1)(A), which states that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section the 90-day period is referred to as the 'removal period')."

24.    Respondents cannot remove Mr. Sanchez-Acosta to El Salvador, his home country, as the

Immigration Judge has ordered that Respondents cannot deport Mr. Sanchez-Acosta to El Salvador, where his life would be in danger.

25. Respondents have no significant likelihood of removing Mr. Sanchez-Acosta in the reasonably foreseeable future to any additional country other than El Salvador. Mr. Sanchez-Acosta has no connection through residence, work, family, or travel to any countries other than the United States and El Salvador. Respondents have not communicated to Mr. Sanchez-Acosta or to his counsel any efforts to remove Mr. Sanchez-Acosta to any country other than El Salvador. Upon information and belief, Respondents are not actively attempting to remove Mr. Sanchez-Acosta to any third country.

26. DHS has given Mr. Sanchez-Acosta no notice or opportunity to respond to removal to any country other than El Salvador. DHS charged Mr. Sanchez-Acosta only with removability to El Salvador and did not designate an alternative country of removal. As a result of DHS's charge, Mr. Sanchez-Acosta presented evidence only addressing his removability and withholding claim to El Salvador, and the Immigration Judge considered only his removability and withholding claim to El Salvador.

27. Removal to a third country, without giving Mr. Sanchez-Acosta the opportunity to contest his removal and seek protection from removal to a possible third country, violates Mr. Sanchez-Acosta's statutory and constitutional rights.

28. While the government may theoretically remove a noncitizen granted a withholding of removal with respect to a specific country, *see* 8 C.F.R. 1208(16(f)), the government must first conduct additional proceedings to determine there is no longer a basis for the removal to be withheld and obtain the legal authority to effect a removal. Those separate

proceedings would determine whether the noncitizen "will actually be removed." *Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016).

29.     If the government seeks the authority to remove to Mr. Sanchez-Acosta to a country other than El Salvador, he may seek withholding of removal as to any other designated country. 8 C.F.R. 241.8(e). This is required by the United Nations Convention Against Torture ("CAT") prohibiting a government's deportation of an individual to any country in which he or she is likely to suffer torture. The United States is a signatory to CAT, and CAT protections are codified in the INA and its implementing regulations.  See 8 U.S.C. § 1231(b)(3); 8 C.F.R. §§ 208.16 - 208.18.

30.     Neither the Immigration and Nationality Act ("INA") nor the U.S. Constitution authorize Mr. Sanchez-Acosta's continued detention as there is no significant likelihood that DHS can remove Mr. Sanchez-Acosta to any country in the reasonably foreseeable future.

31.     Because Mr. Sanchez-Acosta has received an order preventing his removal to El Salvador, and ICE has not identified alternative countries to which he could be removed, there is no administrative process through which Mr. Sanchez-Acosta could apply for release from detention. As a result, there is no further administrative remedy for which Mr. Sanchez-Acosta could apply, and no administrative or statutory exhaustion requirement applies.

32.     Because the Government cannot legally remove Mr. Sanchez-Acosta without violating his rights, Mr. Sanchez-Acosta moves this Court to find that his continued detention is unlawful and to order Respondents to release Mr. Sanchez-Acosta from detention.

## FACTUAL BACKGROUND

*Mr. Sanchez-Acosta's Detention*

33.    Mr. Sanchez-Acosta has lived in the United States for two years. His last entry was in

       May 2016. Since that time, he has been residing in Virginia with his daughter and

       grandchild. Before his detention by ICE in November 2017, Mr. Sanchez-Acosta was the

       primary income provider for his family working in construction.

34.    Respondents arrested Mr. Sanchez-Acosta and placed him in the Farmville Detention

       Center on November 16, 2017, based on charges filed by DHS alleging that Mr. Sanchez-

       Acosta should be removed from the United States. As of the date of filing of the instant

       Petition, Mr. Sanchez-Acosta has been in immigration detention for 240 days.

35.    On May 15, 2018, Immigration Judge Roxanne C. Hladlowycz issued an order granting

       Mr. Sanchez-Acosta withholding from removal to El Salvador. Exhibit A.

36.    Despite the Immigration Judge ordering that Mr. Sanchez-Acosta could not be removed

       to El Salvador, and despite DHS not having sought Mr. Sanchez-Acosta's removal to any

       other country, Respondents have not released Mr. Sanchez-Acosta from their custody.

37.    The ICE Deportation Officer assigned to Mr. Sanchez-Acosta has stated that DHS will

       release Mr. Sanchez-Acosta on August 13, 2018. Exhibit B, ¶ 5.

38.    The ICE Deportation Officer assigned to Mr. Sanchez-Acosta has stated to counsel for

       Mr. Sanchez-Acosta that "ICE-ERO Washington policy is to hold Mr. Sanchez for the

       entirety of the removal period." Exhibit C.

39.    If ICE releases Mr. Sanchez-Acosta on August 13, 2018, Mr. Sanchez-Acosta will have

       been in ICE custody for a total of 271 days.

40.    If ICE releases Mr. Sanchez-Acosta on August 13, 2018, Mr. Sanchez-Acosta will have

been in ICE custody ninety days after the Immigration Judge granted Mr. Sanchez-

Acosta withholding from removal to El Salvador.

41.     Mr. Sanchez-Acosta has no connection to any country other than the United States and El

Salvador. Mr. Sanchez-Acosta has never resided in any country, has no family in any

other country, has never worked in any other country, and has never traveled in any

country other than the United States and El Salvador. *See* Exhibit B, ¶ 7.

42.     Mr. Sanchez-Acosta would face persecution in other Central American countries similar

to the demonstrated credible fear of persecution that caused the Immigration Judge to rule

that Mr. Sanchez-Acosta could not be removed to El Salvador. *See* Exhibit B, ¶ 9.

43.     Mr. Sanchez-Acosta has complied with all requests made by his assigned Deportation

Officer regarding cooperation and provision of information with respect to any attempt

by Respondents to remove Mr. Sanchez-Acosta from the United States.

*DHS and ICE's Recently Revised Rule To Detain Individuals After a Grant of Withholding*

44.     DHS and ICE have stated a rule in policy statements and internal guidelines regarding the

detention of noncitizens to whom an Immigration Court has granted immigration relief

such as withholding of removal pursuant to 1231(b)(3). *See, e.g.*, Memorandum to

Anthony Tangeman, Deputy Executive Associate Commissioner, Office of Detention and

Removal, from Michael J. Garcia, Assistant Secretary, U.S. Immigration and Customs

Enforcement, re "Detention Policy Where and an Immigration Judge has Granted Asylum

and ICE has Appealed," dated Feb. 9, 2004. Exhibit D. In such policy statements and

guidelines, DHS has previously stated that "[i]n general, it is ICE policy to favor release

of aliens who have been granted protection relief by an immigration judge ['such as

withholding of removal'] absent exceptional concerns such as national security issues or danger to the community and absent any requirement under law." *Id*.

45.   DHS reiterated in a 2012 memorandum that "it is ICE policy to favor release of aliens who have been granted protection relief by an immigration judge," and stated that that the DHS memorandum at Exhibit D is "still in effect and should be followed" and that "[t]his policy applies at all times following a grant of protection [including withholding of removal], including during any appellate proceedings and throughout the removal process." Message from Gary Mead, Executive Associate Director, Enforcement and Removal Operations, to Assistant Directors, Field Office Directors, Deputy Field Office Directors, and Assistant Field Office Directors, re "Reminder on Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal or CAT," dated Mar. 6, 2012. Exhibit E.

46.   On February 20, 2017, the Secretary of DHS issued a new memorandum that confirms this long-standing practice. *See* Memorandum from John Kelly, Secretary, DHS, to Devin McAleenan, Acting Commissioner, U.S. Customs and Border Protection, et al., "Implementing the President's Border Security and Immigration Enforcement Improvements Policies," dated February 20, 2017. The DHS statement allows for the release on a case-by-case basis "[w]hen [an] alien obtains an order granting relief or protection from removal." Exhibit F. (Exhibits D, E, and F are collectively referred to as "DHS Rule on Release from Detention"). This rule conforms with prior policy by DHS to release from detention individuals who are granted immigration relief, including withholding of removal.

47.  Without complying with required procedures, however, DHS has abruptly changed its Rule on Release from Detention favoring release of individuals granted withholding of removal. A representative of DHS recently stated that "ICE-ERO Washington Policy is to hold Mr. Sanchez for the entirety of the removal period." Exhibit C, E-mail communication from Detention Officer Frank Corcoran, ICE-Enforcement and Removal Operations, DHS, to David J. Laing, counsel for Mr. Sanchez-Acosta, dated July 6, 2018.

48.  Respondents have not made and are not making any meaningful efforts to remove Mr. Sanchez-Acosta to any country. *See* Exhibits B, C. In any event, such efforts would be futile because Mr. Sanchez-Acosta has no ties to any country other than El Salvador and because DHS did not designate any alternative countries of removal during his removal proceedings before the Immigration Judge.

49.  Mr. Sanchez-Acosta does not pose a risk of flight as he has family, including a daughter and a U.S. citizen granddaughter, living in Virginia, fears return to his home country of El Salvador, has received an order that he cannot be removed to El Salvador, has no connections to any other country, and has no resources to fund travel to another country. Mr. Sanchez-Acosta also does not pose a danger to the community as he only has two minor misdemeanor convictions.

50.  ICE has made no claim that Mr. Sanchez-Acosta poses a risk a flight or a danger to the community.

51.  Mr. Sanchez-Acosta seeks immediate release so he can return to his family and begin providing for them once again. He intends to live peacefully in the United States, as he had done prior to his detention by ICE.

## LEGAL BACKGROUND

### A.    Notice and a Right to Be Heard in Removal Proceedings

52.    The statutory and regulatory framework governing the removal of noncitizens requires the designation of a primary country for removal and, if applicable, designation of any alternative country during the removal proceedings. *See* 8 U.S.C. § 1231(b)(2).

53.    The INA sets out a hierarchy of countries to which an immigrant could be removed. First, the immigrant "may designate one country to which the alien wants to be removed." 8 U.S.C § 1231(b)(2)(A). If an individual does not designate a country, or if the designated country does not timely accept repatriation, the Government may designate a country in which the individual is a citizen or national. 8 U.S.C § 1231(b)(2)(C)-(D). If the individual is not removed to that country, the applicable statute states alternative countries to which an immigrant may be removed. *See* 8 U.S.C. § 1231(b)(E); *see also Jama v. ICE*, 543 U.S. 335, 341 (2005).

54.    Regulations implementing the INA require that the Immigration Judge "identify for the record a country, or countries in the alternative, to which the alien's removal may be made pursuant to § 1231(b)(1) of the INA if the country of the alien's designation will not accept him or her into its territory, or fails to furnish timely notice of acceptance, or if the alien declines to designate a country."  8 C.F.R. § 1240.10(f). The regulations recognize that removal to the primary country of removal may not always be possible. *Id.* Thus, 8 C.F.R. § 1240.10(f) requires that alternative countries be designated during the removal proceedings to account for such a possibility.

55.    Further recognizing that country designations need to be made before or during the removal proceeding, implementing regulations for the removal process state that "[n]o

commitment of acceptance by the receiving country is required prior to designation of the

receiving country . . . ." 8 C.F.R. § 241.15(d).

56.  Designating a country for removal before or during the removal proceeding protects basic

statutory and constitutional due process rights requiring notice and a hearing to present

evidence. Specifically, 8 U.S.C. § 1229a(b)(4) states that in removal proceedings an

immigrant shall have a "reasonable opportunity to examine the evidence against the alien,

to present evidence on the alien's own behalf, and to cross-examine witnesses presented

by the government"); *see also* 8 C.F.R. § 1208.2(c)(3); U.S. Const., Amend. V;

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985); *Mathews v.

Eldridge*, 424 U.S. 319, 332-33 (1976).

57.  The U.S. Court of Appeals for the Fourth Circuit has long recognized that it is "well

settled that a fair hearing to [an] alien is a condition precedent to deportation." *Tassari v.

Schmucker*, 53 F.2d 570 (4th Cir. 1931). Other federal courts of appeal have similarly

held that "affirming a deportation order without a fair hearing concerning that deportation

violate[s] due process." *Kuhai v INS*, 199 F.3d 909, 913 (7th Cir. 1999); *see also Su Hwa

She v. Holder*, 629 958, 965 (9th Cir 2010) ("It follows that a failure to provide notice

and, upon request, stay removal or reopen the case for adjudication of [Plaintiff's]

applications as to Burma would constitute a due process violation if Burma becomes the

proposed country of removal.") A U.S. District Court within this District has also held

that "DHS could not immediately remove petitioners to a third country, as DHS would

first need to give petitioners notice and the opportunity to raise any reasonable fear

claims." *Romero v. Evans*, 280 F.Supp.3d 835, 847 fn.24 (E.D.Va. 2017); *see also,

*Cabrera-Diaz*, 297 F.Supp.3d at 625 ("At the least, DHS would be required to give petitioners notice and the opportunity for a hearing.").

58.   In order to ensure a fair hearing, the Immigration Judge must designate the potential countries of removal, hear evidence and consider arguments on each potential country of removal, and make findings as to each potential country of removal. *See Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."); *Kossov v. INS*, 132 F.3d 405, 409 (7th Cir. 1998) (vacating denial of asylum and withholding on the grounds that two aliens were deprived of "a full and fair hearing for their claims" as to such a third country).

59.   On information and belief, ICE's failure to designate possible third countries of removal during proceedings before an Immigration Judge is because there are no viable options for removal other than the individual's country of origin.

**B.   Statutory, Regulatory, and Constitutional Limits to Detention**

1.   Statutory Limits on Immigration Detention

60.   Title 8 U.S.C. § 1231(a) governs the detention of an individual with an administratively final order of removal.

61.   When an Immigration Judge grants withholding of removal, the Judge orders the person's removal to the identified country, *e.g.*, El Salvador, and then simultaneously prohibits removal to that country because the "alien's life or freedom would be threatened" on account of certain grounds enumerated in the INA. 8 U.S.C. § 1231(b)(3).

62.     The INA permits DHS to detain an immigrant during the "removal period," 8 U.S.C.

        §§ 1231(a)(1)(A); 1232(a)(2), which is defined as the 90-day period following the

        issuance of a final order of removal.

63.     The same statutory provision, however, recognizes a specific exception for noncitizens

        granted "withholding of removal." As set forth above, 8 U.S.C. § 1231(b)(3) authorizes

        an Immigration Judge to grant "withholding of removal" when he or she determines that

        the "alien's life or freedom would be threatened" because of certain enumerated grounds.

64.     A noncitizen granted withholding of removal pursuant to 8 U.S.C. § 1231(b)(3) is

        therefore not subject to detention under § 1231(a)(2) because the noncitizen fits within an

        exception to the statutory definition of noncitizens detained during the "removal period."

65.     The detention authority provided by § 1231(a) applies only to noncitizens who have been

        ordered removed to a country and does not apply to individuals in any of the enumerated

        exceptions, including withholding of removal stated in § 1231(b)(3).

66.     Section 1231(a) does not authorize a noncitizen's continued detention for the government

        to explore possibilities of removal to countries that have not been designated in removal

        proceedings and for which the noncitizen has received no notice of designation for

        removal or been afforded an opportunity to present information and argument on removal

        to that county.

                    2.   Regulatory Limits on Immigration Detention

67.     8 C.F.R. § 241.13 states the obligations of Respondents when "there is no significant

        likelihood of removal to the country to which [a noncitizen] was ordered removed, or to a

        third country, in the reasonably foreseeable future."

68.     If DHS determines that there is no significant likelihood of a noncitizen's removal in the reasonably foreseeable future, the regulations instruct DHS to release the noncitizen on an order of supervision. 8 C.F.R. § 241.13(h) ("Conditions of release"); *see also* 8 C.F.R. § 241.5 ("Conditions of release after removal period").

69.     The Supreme Court has affirmed that where there is no significant likelihood of removal in the reasonably foreseeable future, detention is not reasonably related to a legitimate government interest. *Demore v. Kim*, 538 U.S. 510 (2003) ("detention of [noncitizens] would not serve a legitimate immigration purpose if there were no 'significant likelihood of removal in the reasonably foreseeable future.'" *Id*. at 553, *quoting Zadvydas*, 533 U.S. at 701.

70.     8 C.F.R. § 241.13 states the obligations of Respondents when "there is no significant likelihood of removal to the country to which [a noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." If DHS determines that there is no significant likelihood of a noncitizen's removal in the reasonably foreseeable future, the regulations instruct DHS to release the noncitizen on an order of supervision. 8 C.F.R. § 241.13(h) ("Conditions of release"); *see also* 8 C.F.R. § 241.5 ("Conditions of release after removal period").

    3.   Constitutional Limits on Immigration Detention

71.     Constitutional limits on detention are well established. The Supreme Court has stated that the purpose of detention during the removal period is to "secure the alien's removal," *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized." *Id*. at 680. "[W]here detention's goal is no longer practically attainable, detention no longer

17

'bear[s][a] reasonable relation to the purpose for which the individual [was] committed.'" *Id*. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

72. Government detention violates due process unless it is reasonably related to a legitimate government purpose. *Zadvydas*, 533 U.S. at 701. If the Government detains the noncitizen for more than a brief time without a government purpose when the government cannot effect removal, the detention violates Constitutional guarantees of due process. *Id*.; *Demore v. Kim*, 538 U.S. at 553 ("detention of aliens would not serve a legitimate immigration purpose if there were no 'significant likelihood of removal in the reasonably foreseeable future'").

73. The Supreme Court has held that where there is no possibility of removal, immigration detention presents substantive due process concerns because (a) the need to detain the noncitizen to ensure the noncitizen's availability for future removal proceedings is "weak or nonexistent," and (b) there is no need to protect the community without a finding that the noncitizen is dangerous. *Zadvydas*, 533 U.S. at 690-92. Detention is lawful only when "necessary to bring about that alien's removal." *Id*. at 689.

### C. Agency Rule-Making Requirements

74. An agency modifying or altering a rule must provide adequate reasons for that change. "One of the basic procedural requirements of administrative rulemaking is than an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 136 U.S. 2117, 2125 (2016). If the agency "provides an explanation of its decision that includes a rational connection between the facts found and the choice made," a court may uphold the agency's decision. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*

*Co.*, 463 U.S. 29, 43 (1983)). "But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars*, 136 S.Ct. at 2125 (*citing State Farm*, 463 U.S. at 42–43).

75.     "The same principles apply to a change in agency position" regarding immigration rules and policy. *Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 298 (4th Cir. 2018). At a minimum, an agency must "display awareness that it is changing position and show that there are good reasons for the new policy." *Id.* (*quoting Encino Motorcars*, 136 U.S. at 2126). "In explaining its changed position, an agency must also be cognizant that long-standing policies may have engendered serious reliance interests that must be taken into account." *Id.* A "reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Encino Motorcars*, 136 U.S. at 2126. An "unexplained inconsistency" in agency policy indicates that the agency's action is arbitrary and capricious, and therefore unlawful. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005); *Jimenez-Cedillo*, 885 F.3d at 298.

## CLAIMS

### FIRST CLAIM FOR RELIEF

**Immigration and Nationality Act, 8 U.S.C. §§ 1231(a)**
**and 1240.10(f) (Actions Unauthorized by Statute)**

76.     Mr. Sanchez-Acosta re-alleges and incorporates by reference the preceding paragraphs.

77.     Title 8 U.S.C. § 1231(a) does not authorize his detention, nor do any other detention statutes within the INA.

78.     Because an Immigration Judge has determined that Mr. Sanchez-Acosta cannot beremoved to El Salvador, DHS is legally incapable of effecting his 2018 removal order

to El Salvador.

79. Respondents have not sought or purported to seek removal of Mr. Sanchez-Acosta to an alternative country.

80. Respondents cannot effect Mr. Sanchez-Acosta's removal to an alternative country because Mr. Sanchez-Acosta has no ties to any other country.

81. The Immigration Judge designated, and Respondents accepted, El Salvador as the only country of removal for Mr. Sanchez-Acosta. The Immigration Judge did not designate any alternative country or countries for Mr. Sanchez-Acosta's possible removal, nor did DHS allege an alternative country for removal. The Immigration Judge did not hear evidence or argument concerning Mr. Sanchez-Acosta's removal to an alternative country. No other country was mentioned during Mr. Sanchez-Acosta's removal proceedings.

82. Any attempt by Respondents to remove Mr. Sanchez-Acosta to countries that have not been designated before or during the removal proceeding violates the requirement in 8 U.S.C. § 1240.10(f) that the Immigration Judge designate all countries of removal and does not provide Mr. Sanchez-Acosta an opportunity to present evidence and argument on removal to a specific country.

83. 8 U.S.C. § 1229a(4) states that an immigrant shall have a "reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the government." *See also* 8 C.F.R. § 1208.2(c)(3) (regulations implementing the INA).

84. ICE has not provided Mr. Sanchez-Acosta of notice of any alternative country to which Respondents might seek to remove him.

85.     A lack of notice of alternative removal countries makes it impossible for Mr. Sanchez-Acosta to present a defense related to removal to that unspecified alternative country, as applicable statutes require.

86.     Mr. Sanchez-Acosta has never resided in any country other than El Salvador and the United States, giving him no reason to anticipate, and no opportunity to challenge, the Government's attempts to remove him to a third country, especially in a country where there is a possibility of persecution.

87.     To remove petitioner to a country other than El Salvador, the government must obtain a new order that authorizes removal to that third country. If the government seeks such authorization, Petitioner may seek withholding of removal relief as to that third country. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 241.8(e).

88.     The possibility of removing Mr. Sanchez-Acosta to an alternative country where he has never resided and never visited are so remote that Respondents do not have a legitimate government purpose to continue Mr. Sanchez-Acosta's detention.

89.     Because DHS's efforts to remove Mr. Sanchez-Acosta are currently foreclosed, Mr. Sanchez-Acosta's continued detention is not authorized by 8 U.S.C. § 1231(a)(1). That statute defines the removal period as the period of time when "the Attorney General shall remove the alien." *Id*. Detention under § 1231(a) is only allowed in order for the Government to effect a noncitizen's removal.

90.     There is no significant likelihood of Mr. Sanchez-Acosta's removal in the reasonably foreseeable future. Regulations implementing the INA provide that, if there "is good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future,"

Respondents should release the individual under an order of supervision. 8 C.F.R.

§§ 241.4(i)(7) and 241.13.

91.   Respondents cannot effect Mr. Sanchez-Acosta's removal to El Salvador, the designated

country for removal, nor can the Government remove him to an undesignated alternative

country without violating the statutory and regulatory requirements for removal

proceedings.

92.   Respondents' continued detention of Mr. Sanchez-Acosta therefore violates the INA and

the regulations implementing the INA.

## SECOND CLAIM FOR RELIEF
### Procedural Due Process

93.   Mr. Sanchez-Acosta re-alleges and incorporates by reference the preceding paragraphs.

94.   Mr. Sanchez-Acosta is entitled to procedural due process protections. *See Reno v. Flores*,

507 U.S. 292, 306 (1993); *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).

95.   In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court weighed the private

individual's interest and the risk of erroneous deprivation of that interest against the

government's interest and determined that procedural safeguards were necessary to

preserve constitutional due process.

96.   Mr. Sanchez-Acosta has an interest in being free from physical restraint, which "lies at

the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S.

678, 690 (2001) (*citing Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

97.   Respondents are unlawfully depriving Mr. Sanchez-Acosta of his liberty. The Due

Process Clause protects against even short detentions. There must be protections "in a

case that actually leads to imprisonment even for a brief period." *Argersinger v. Hamlin*,

407 U.S. 25, 33 (1972).

98.    DHS has given Mr. Sanchez-Acosta no notice or opportunity to respond to removal to

any country other than El Salvador. DHS charged Mr. Sanchez-Acosta only with

removability to El Salvador. As a result of DHS's charge, Mr. Sanchez-Acosta presented

evidence to address his removability and withholding claim to El Salvador, and the

Immigration Judge considered only his removability and withholding claim to El

Salvador.

99.    Removal to a third country, without giving Mr. Sanchez-Acosta the opportunity to contest

his removal and seek protection from removal to a possible third country, violates Mr.

Sanchez-Acosta's statutory and constitutional rights.

100.    As of the date of the filing of this Petition, Respondents have unlawfully continued Mr.

Sanchez-Acosta's detention for sixty days after an Immigration Judge ordered that

Respondents could not remove Mr. Sanchez-Acosta from the United States. For all of that

time, Mr. Sanchez-Acosta's detention has been and will be unlawful.

101.    Respondent's continued detention of Mr. Sanchez-Acosta deprives him of his right to

procedural due process.

### THIRD CLAIM FOR RELIEF
### Substantive Due Process

102.    Mr. Sanchez-Acosta re-alleges and incorporates by reference the preceding paragraphs.

103.    Mr. Sanchez-Acosta is entitled to substantive due process protections while in the

custody of Respondents in immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 689-

90 (2001).

104.    Mr. Sanchez-Acosta has an interest in being free from physical restraint, which "lies at

the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690

(2001). Respondents are unlawfully depriving Mr. Sanchez-Acosta of his liberty.

105.   An Immigration Judge has ordered that Mr. Sanchez-Acosta cannot be removed to his

home country, El Salvador.

106.   Respondents continue to detain Mr. Sanchez-Acosta and have stated that it is their

"policy to hold Mr. Sanchez-Acosta for the entirety of the removal period."

107.   The "removal period" is a reference to a 90-day period applicable to individuals who

have been ordered deported but who have not received an order withholding removal.

Detention during the "removal period" is not authorized for individuals like Mr. Sanchez-

Acosta who have received withholding of removal.

108.   Respondents have not indicated that they are attempting to remove Mr. Sanchez-Acosta

to any other country.

109.   There is no reasonable possibility that Respondents can remove Mr. Sanchez-Acosta to

another country in the reasonably foreseeable future.

110.   Immigration detention is lawful only when "necessary to bring about [an] alien's

removal." *Zadvydas*, 533 U.S. at 689.

111.   Government detention violates due process unless it is reasonably related to a legitimate

government purpose. *Zadvydas*, 533 U.S. at 701. If the government detains the noncitizen

for more than a brief time without a legitimate purpose when the government cannot

effect removal, the detention violates constitutional guarantees of due process. *Id.*;

*Demore v. Kim*, 538 U.S. at 553.

112.   There is no legitimate government interest in Respondent's continued detention of Mr.

Sanchez-Acosta.

113.   Respondents' continued detention of Mr. Sanchez-Acosta, after an Immigration Judge has

ordered that Mr. Sanchez-Acosta cannot be removed to El Salvador and there is no

substantial likelihood that Respondents can remove Mr. Sanchez-Acosta to another country in the reasonably foreseeable future, violates Mr. Sanchez-Acosta's substantive due process right to freedom from incarceration.

## FOURTH CLAIM FOR RELIEF
### Administrative Procedure Act, 5 U.S.C. § 553 (Rule-Making)

114. Mr. Sanchez-Acosta re-alleges and incorporates by reference the preceding paragraphs.

115. The APA requires this Court to hold unlawful and set aside any agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

116. DHS is an "agency" under the APA. 5 U.S.C. § 551(1).

117. Agency rules must go through notice-and-comment procedures. 5 U.S.C. § 553.

118. Respondents have previously issued statements directing that individuals who have been granted relief by an Immigration Judge such as withholding of removal should be released from detention. Respondents' prior statements are a "rule" under the APA. 5 U.S.C. § 551(4).

119. Respondents have stated with respect to Mr. Sanchez-Acosta that it is their "policy to hold Mr. Sanchez for the entirety of the removal period."

120. Respondents have materially altered a rule without complying with the public notice and comment process and period required by the APA. Respondents' alteration of the rule affecting detention of noncitizens granted immigration relief is therefore unlawful under 5 U.S.C. § 553.

121. Respondents' DHS Rule on Release from Detention has been stated, followed by Respondents, and relied upon by detained noncitizens for a minimum of eighteen years, dating from the earliest statement of this rule. Respondents have now substantially altered

that rule without explaining its basis for that rule change or providing public notice of the proposed change and an opportunity for public comment.

122.    Respondents' actions constitute "final agency action" reviewable under the APA. 5 U.S.C. § 704.

123.    Respondents' violation of APA rule-making requirements has caused and continues to cause substantial harm to Mr. Sanchez-Acosta by unlawfully prolonging his detention in Respondents' custody.

## FIFTH CLAIM FOR RELIEF
### Administrative Procedure Act, 5 U.S.C. § 706 (Arbitrary and Capricious Agency Action)

124.    Mr. Sanchez-Acosta re-alleges and incorporates by reference the preceding paragraphs.

125.    The APA requires this Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;  (B) contrary to constitutional right, power, privilege, or immunity;  [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).

126.    Respondents have previously issued public statements and internal policy guidelines directing DHS to release from detention noncitizens who have been granted relief by an Immigration Judge such as withholding of removal. Respondents have not provided any reasoned explanation whatsoever for changing this policy.

127.    This change has substantially adversely affected Petitioner, unreasonable consequences, as evidenced in Mr. Sanchez-Acosta's case where there are no alternative countries of removal that were designated, the only country of removal is El Salvador, his removal to El Salvador has been withheld, yet he remains waiting for release until an arbitrary point in time.

128. Respondents have stated that, with respect to Mr. Sanchez-Acosta, it is their "policy to hold Mr. Sanchez for the entirety of the removal period."

129. Respondents have arbitrarily and capriciously and without explanation continued Mr. Sanchez-Acosta's detention in violation of 5 U.S.C. § 706.

130. Respondents' actions constitute a "final agency action" under the APA.  5 U.S.C. § 704.

131. Respondents' arbitrary and capricious actions have caused and are causing substantial harm to Mr. Sanchez-Acosta by unlawfully prolonging his detention in Respondents' custody.

## PRAYER FOR RELIEF

Wherefore, Mr. Sanchez-Acosta respectfully asks the Court to:

1. Assume jurisdiction over this matter;

2. Declare that no statute permits Mr. Sanchez-Acosta's continued detention;

3. Declare that Mr. Sanchez-Acosta's continued detention without authority violates Mr. Sanchez-Acosta's substantive and procedural due process rights;

4. Grant the writ of habeas corpus and order that Respondents release Mr. Sanchez-Acosta from detention;

5. Declare that Respondents' actions violate the Administrative Procedure Act;

6. Order that the Government reimburse the attorneys' fees and expenses incurred in connection with this Petition, under the Equal Access to Justice Act 5 U.S.C. § 504, 28 U.S.C. § 2412; and

7.      Grant any other and further relief that this Court deems just and proper.


                                        Respectfully submitted,


Dated:  July 13, 2018                   By: /s/ Adina Appelbaum
                                        Adina Appelbaum VA Bar. No. 88974
                                        David J. Laing (pro hac vice application forthcoming)
                                        Claudia Cubas (pro hac vice application forthcoming)
                                            Pro Bono Attorneys for Petitioner

                                        Capital Area Immigrants' Rights (CAIR) Coalition
                                        1612 K Street NW
                                        Suite 204
                                        Washington, DC 20006
                                        (202) 769-5231 (Tel.)
                                        (202) 331-3341 (Fax)

                                        Sirine Shebaya (pro hac vice application forthcoming)
                                        Senior Staff Attorney
                                        Muslim Advocates
                                        P.O. Box 66408
                                        Washington, DC 20035
                                        sirine@muslimadvocates.org
                                        (202) 897-2622 (Tel.)
                                            Pro Bono Attorney for Petitioner

CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on July 13, 2018, I caused to be served a true copy of the foregoing Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief on all Respondents-Defendants by registered mail to the following addresses:

Jefferson B. Sessions, III
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Kirstjen Nielsen
Secretary
US Department of Homeland Security
c/o Office of the General Counsel
US Department of Homeland Security,
245 Murray Lane, SW
Mail Stop 0485
Washington, DC, 20528

U.S. Attorney for the Eastern District of Virginia
Justin W. Williams US Attorney's Building
2100 Jamieson Ave
Alexandria, VA 22314

Thomas D. Homan
Acting Director
US Immigration and Customs Enforcement
c/o Office of the General Counsel
US Department of Homeland Security,
Washington, DC, 20528

Jeffrey Crawford
Warden, Farmville Detention Center
281-433 Waterworks Rd
Farmville, VA 23901

Russell Hott
Director, Washington Field Office
US Immigration and Customs Enforcement
c/o Office of the General Counsel
US Department of Homeland Security,
Washington, DC, 20528

_/s/ Adina Appelbaum_____
Adina Appelbaum
Capital Area Immigrants' Rights (CAIR) Coalition
1612 K Street NW
Suite 204
Washington, DC 20006