IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| Julio Cesar Sanchez-Acosta, Khaled Najjar, *and* Minase Tesfateon,<br><br>*on behalf of themselves and all others similarly situated*<br><br>*Petitioners-Plaintiffs,*<br><br>v.<br><br>Jefferson B. Sessions, III, in his official capacity as the *Attorney General*; Kirstjen Nielsen, in her official capacity as the *Secretary, Department of Homeland Security*; Thomas D. Homan, in his official capacity as the *Acting Director*, *U.S. Immigration and Customs Enforcement*; Russell Hott, in his official capacity as the Field Office Director, *Washington Field Office Director*, *U.S. Immigration and Customs Enforcement*; *and* Jeffrey Crawford, in his official capacity as *Warden*, *Farmville Detention Center, Immigration Centers of America-Farmville*,<br><br>　　*Respondents-Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>**FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>Civ. No.: 1:18-cv-00872-LO-IDD |

---

## INTRODUCTION

1. Petitioners-Plaintiffs, Julio Cesar Sanchez-Acosta ("Mr. Sanchez-Acosta"), Khaled Najjar ("Mr. Najjar"), and Minase Tesfateon ("Mr. Tesfateon") (collectively "Petitioners"), on behalf of themselves and a class of similarly situated individuals, petition this Court to issue a Writ of Habeas Corpus ordering their immediate release from custody.

1

2.  The Petitioners are currently incarcerated in the custody of Respondents-Defendants ("Respondents"). Petitioners have been incarcerated in the custody of Respondents for periods of 247 to 450 days as of the date of the filing of this Petition.

3.  An Immigration Judge has granted each of the Petitioners withholding of removal to specific countries to which Respondents sought to remove the Petitioners. Withholding of removal is a form of immigration protection similar to asylum that prohibits the government from removing an immigrant to a particular country because he has demonstrated that he will be persecuted on account of a protected ground if removed to that country. Individuals granted withholding of removal are protected from removal to a specific country or countries and are permitted to remain lawfully in the United States and to obtain employment authorization.

4.  On May 15, 2018, an Immigration Judge granted Mr. Sanchez-Acosta withholding of removal based on a finding that he would likely suffer persecution if returned to his home country of El Salvador.

5.  On June 1, 2018, an Immigration Judge granted Mr. Najjar withholding of removal based on a finding that he would likely suffer persecution if returned to his home country of Palestine.

6.  On June 6, 2018, an Immigration Judge granted Mr. Tesfateon withholding of removal based on a finding that he would likely suffer persecution if returned to his home country of Ethiopia or if removed to Eritrea.

7.  Despite the fact that Petitioners have been granted relief by an Immigration Judge, Respondents continue to detain Petitioners and have stated to at least one of the Petitioners that they will not release for an additional ninety-day period.

8. Respondents have asserted that they have adopted a policy of detaining individuals granted withholding of removal for an additional ninety days thereafter, even when there is no reasonable likelihood that Respondents will be able to remove those individuals.

9. This ICE policy or practice directly and adversely affects Petitioners and violates the Immigration and Nationality Act ("INA"), regulations that implement the INA, and Petitioners' constitutional right to due process.

10. Accordingly, Petitioners request that the Court grant this petition, certify a class of similarly situated individuals, declare unlawful the continued detention of Petitioners and class members, and order Respondents to release Petitioners and class members from detention forthwith.

## **CUSTODY**

11. Mr. Sanchez-Acosta has been in the custody of Respondents since November 16, 2017, 255 days as of the date of the filing of this Petition.

12. Mr. Najjar has been in the custody of Respondents since April 27, 2017, 450 days as of the date of the filing of this Petition.

13. Mr. Tesfateon has been in the custody of Respondents since August 3, 2017, 352 days as of the date of the filing of this Petition.

14. Petitioners have been and remain detained within the area of responsibility of the ICE Enforcement and Removal Operations ("ERO") Washington Field Office located in Fairfax, Virginia.

15. Petitioners are detained at the Farmville Detention Center located in Farmville, Virginia. This detention facility is operated by a private, non-governmental company under a contract with ICE.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to Art. I, § 9, cl. 2 of the United States Constitution;

28 U.S.C. §2241 (the general grant of habeas authority to the district courts); 28 U.S.C.

§1331 (federal question jurisdiction); and 28 U.S.C. §§ 2201, 2202 (Declaratory

Judgment Act).

7.     The federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas claims

by noncitizens challenging the lawfulness or constitutionality of their detention by DHS.

*See Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687

(2001); *Aguilar v. Lewis*, 50 F.Supp.2d 539 (E.D. Va. 1999).

8.     This action also arises under the Immigration and Nationality Act of 1952 ("INA"), as

amended, 8 U.S.C. § 1101 *et seq.,* the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 702, and the Due Process Clause of the Fifth Amendment to the United States

Constitution.

9.     The APA affords a right of review to a person who is "adversely affected or aggrieved by

agency action." 5 U.S.C. §702. Respondents' prolonged detention of Petitioners and

Respondents' policy or practice of continuing Petitioners' detention for a minimum of an

additional ninety days after an Immigration Judge has granted withholding of removal

has severely and adversely affected Petitioners' liberty and freedom.

10.    Respondents' actions to remove Petitioners constitute "final agency action" reviewable

under the APA.  5 U.S.C. § 704; *Romero v. Evans*, 280 F.Supp.3d 835, 847 (E.D.Va.

2017) ("In agency law, finality is generally achieved when an action both "marks the

4

consummation of the agency's decision making process" and also determines legal rights and obligations," *citing Bennett v. Spear*, 520 U.S. 154 (1997)).

11. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*; the All Writs Act, 28 U.S.C. § 1651; and Fed. R. Civ. P. 57 and 65.

12. Venue is proper under 28 U.S.C. §1391(e) because Petitioners are currently detained at the Farmville Detention Center in Farmville, Virginia, within the jurisdiction of the Eastern District of Virginia. 28 U.S.C. § 2241(d). Respondent Russell Hott, whose office is located in Fairfax, Virginia, oversees ICE-ERO operations, which in turn manages the contract for the detention of immigrants at the Farmville Detention Center.

## THE PARTIES

13. Petitioner Julio Cesar Sanchez-Acosta is a native and citizen of El Salvador. He most recently entered the United States in May 2016. He has a 19-year-old daughter and a U.S. citizen granddaughter living in Virginia. Before his detention on November 16, 2017, Mr. Sanchez-Acosta was the primary income provider for these family members. Respondents are currently detaining Mr. Sanchez-Acosta at the Farmville Detention Center, controlled and operated by the company Immigration Center of America – Farmville, in Farmville, Virginia.

14. Petitioner Khaled Najjar is a native and citizen of Palestine. He most recently entered the United States in 2014. Before being detained by ICE, he was the principal financial supporter of his wife, who is currently undergoing intensive chemotherapy for cancer, and their three sons. Respondents are currently detaining Mr. Najjar at the Farmville Detention Center, controlled and operated by the company Immigration Center of

America – Farmville, in Farmville, Virginia.

15.    Petitioner Minase Tesfateon is a native and citizen of Ethiopia. He fled Ethiopia and was

admitted to the United States as a refugee on March 13, 1992 and thereafter adjusted his

status to a lawful permanent resident. An Immigration Judge declared Mr. Tesfateon

mentally incompetent. On June 6, 2018, an Immigration Judge granted Mr. Tesfateon

withholding of removal to Ethiopia and Eritrea. Respondents are currently detaining Mr.

Tesfateon at the Farmville Detention Center, controlled and operated by the company

Immigration Center of America – Farmville, in Farmville, Virginia.

16.    Respondent Jefferson B. Sessions III is the Attorney General of the United States.

Pursuant to 8 U.S.C. § 1226(a), as the head of the U.S. Department of Justice, of which

the Executive Office for Immigration Review is an office, and which includes the

Immigration Courts in which Petitioners and class members are charged with and can

contest their removal and all related issues about their immigration status. He is sued in

his official capacity.

17.    Respondent Kirstjen Nielsen is the Secretary of the Department of Homeland Security

("DHS").  Ms. Nielsen and DHS have supervisory control over Immigrations and

Customs Enforcement, the agency with custody over Petitioners and class members. She

is sued in her official capacity.

18.    Respondent Thomas D. Homan is the Acting Director of Immigration and Customs

Enforcement ("ICE"), U.S. Department of Homeland Security. Petitioners and class

members are detained under the authority of Mr. Homan. He is sued in his official

capacity.

19.    Respondent Russell Hott is the Field Office Director of the ICE Enforcement and

Removal Operations Washington Field Office, and is the federal agent charged with overseeing all ICE detention centers in Virginia. Petitioners and class members are detained under the authority of Mr. Hott.  He is sued in his official capacity.

20.    Respondent Jeffery Crawford is the Warden of the Farmville Detention Center, which is owned and operated by ICA–Farmville, and is the facility at which Respondents have detained Mr. Sanchez-Acosta. ICE contracts with the Farmville Detention Center to detain immigrants. Accordingly, Mr. Crawford is the immediate custodian of Petitioners and class members. He is sued in his official capacity.

## FACTUAL BACKGROUND

*Mr. Sanchez-Acosta*

21.    Mr. Sanchez-Acosta is a native and citizen of El Salvador who has been detained at the Farmville Detention Center in Farmville, VA since November 16, 2017.

22.    Mr. Sanchez-Acosta has lived in the United States for two years. His last entry was in May 2016. Since that time, he has been residing in Chesterfield, Virginia with his daughter and grandchild. Before his detention by ICE in November 2017, Mr. Sanchez-Acosta worked in construction and was the primary income provider for his family.

23.    Respondents arrested Mr. Sanchez-Acosta and placed him in the Farmville Detention Center on November 16, 2017, based on charges filed by DHS alleging that Mr. Sanchez-Acosta should be removed from the United States. As of the date of filing of this pleading, Mr. Sanchez-Acosta has been in immigration detention for 247 days.

24.    Mr. Sanchez-Acosta applied for asylum and withholding of removal after gangs in El Salvador killed his father and two brothers, threatened and shot at him, and attacked a cousin with gasoline, setting him on fire. Mr. Sanchez-Acosta fears being killed if

returned to El Salvador on account of his family ties.

25.     On May 15, 2018, Immigration Judge Roxanne C. Hladylowycz issued an order granting

      Mr. Sanchez-Acosta withholding from removal to El Salvador, pursuant to 8 U.S.C.

      § 1231(b)(3). Immigration Judge Order, <u>Exhibit A</u>.  At the same hearing, the Department

      of Homeland Security waived appeal.  <u>*Id.*</u> (Judge noted DHS waived appeal). Thus, the

      order became administratively final on May 15, 2018.

26.     Despite the Immigration Judge ordering that Mr. Sanchez-Acosta could not be removed

      to El Salvador, and despite DHS not having sought Mr. Sanchez-Acosta's removal to any

      other country, Respondents have not released Mr. Sanchez-Acosta from their custody.

27.     The ICE Deportation Officer assigned to Mr. Sanchez-Acosta has stated that DHS will

      not release Mr. Sanchez-Acosta until August 13, 2018.  *See* Declaration of Julio Sanchez-

      Acosta, <u>Exhibit B</u>, ¶ 5.

28.     The ICE Deportation Officer assigned to Mr. Sanchez-Acosta has stated to counsel for

      Mr. Sanchez-Acosta that "ICE-ERO Washington policy is to hold Mr. Sanchez for the

      entirety of the removal period." *See* E-mail communication from Detention Officer Frank

      Corcoran, ICE-Enforcement and Removal Operations, DHS, to David J. Laing, counsel

      for Mr. Sanchez-Acosta, dated July 6, 2018, <u>Exhibit C</u>.

29.     If ICE releases Mr. Sanchez-Acosta on August 13, 2018, Mr. Sanchez-Acosta will have

      been in ICE custody for a total of 271 days.

30.     If ICE releases Mr. Sanchez-Acosta on August 13, 2018, Mr. Sanchez-Acosta will have

      been in ICE custody ninety days after the Immigration Judge granted Mr. Sanchez-

      Acosta withholding from removal to El Salvador.

31.     Mr. Sanchez-Acosta has no connection to any country other than the United States and El

Salvador. Mr. Sanchez-Acosta has never resided in any country, has no family in any other country, has never worked in any other country, and has never traveled in any country other than the United States and El Salvador. *See* Exhibit B, ¶ 7.

32.  Mr. Sanchez-Acosta would face persecution in other Central American countries similar to the demonstrated credible fear of persecution that caused the Immigration Judge to rule that Mr. Sanchez-Acosta could not be removed to El Salvador. *See* Exhibit B, ¶ 9.

33.  Mr. Sanchez-Acosta has complied with all requests made by his assigned Deportation Officer regarding cooperation and provision of information with respect to any attempt by Respondents to remove Mr. Sanchez-Acosta from the United States.

*Mr. Najjar*

34.  Mr. Najjar is a native and citizen of Palestine who has been detained at the Farmville Detention Center in Farmville, VA since April 27, 2017.

35.  Mr. Najjar has lived in the United States for more than fourteen years, residing in Chesterfield, Virginia with his wife and their three sons. Before his detention by ICE in April 2017, Mr. Najjar and his wife operated a neighborhood convenience store in Chesterfield County, Virginia.

36.  Respondents arrested Mr. Najjar and placed him in the Farmville Detention Center on April 27, 2017, based on charges filed by DHS alleging that Mr. Najjar should be removed from the United States. As of the date of this filing, Mr. Najjar has been in immigration detention for 450 days.

37.  On June 1, 2018, Immigration Judge Roxanne C. Hladylowycz issued an order granting Mr. Najjar withholding of removal to Palestine, pursuant to 8 U.S.C. § 1231(b)(3). Immigration Judge Order, Exhibit D.  At the same hearing, the Department of Homeland

Security waived appeal. See Immigration Judge Order, Exhibit D. The period in which Respondents could have appealed the Immigration Judge's Order has expired. Thus, the order became administratively final on June 1, 2018.

38. The Immigration Judge granted Mr. Najjar withholding of removal based on his fear of persecution by the Palestinian Authority that governs Palestine and by Hamas, which controls the government of Palestine. Mr. Najjar speaks fluent Hebrew, studies the Torah, and affiliates with members of the Jewish religion. Mr. Najjar fears being killed if returned to Palestine because of his imputed ties to the Jewish religion. Declaration of Khaled Najjar, Exhibit E, ¶ 9-10.

39. Despite the fact that the Immigration Judge ordered that Mr. Najjar could not be removed to Palestine, Respondents have not released Mr. Najjar from their custody.

40. Mr. Najjar has no connection to any country other than the United States and Palestine. Mr. Najjar has never resided in any country, has no family in any other country, and has only worked in the United States, Palestine, and Israel. *See* Exhibit E, ¶ 11.

41. Respondents have not identified any release date for Mr. Najjar and that his detention in Respondent's custody will not be reevaluated until August 19, 2018 at the earliest. ICE, Notice to Alien of File Custody Review, Exhibit F.

42. If Respondents release Mr. Najjar ninety days after the Immigration Judge granted withholding of removal to Palestine, Mr. Najjar will have been in ICE custody for a total of 490 days.

43. Mr. Najjar has complied with all requests made by his assigned Deportation Officer regarding cooperation and provision of information with respect to any attempt by Respondents to remove Mr. Najjar from the United States.

*Mr. Tesfateon*

44.   Mr. Tesfateon is a native and citizen of Ethiopia who has been detained at the Farmville

Detention Center in Farmville, VA since August 3, 2017. Mr. Tesfateon has lived in the

United States for more than twenty-six years. He entered the United States on March 13,

1992, as a refugee, and thereafter adjusted his status to a lawful permanent resident. For

at least some portion of the last several years before his detention, Mr. Tesfateon resided

in a homeless shelter in Loudoun County, Virginia. Decl. of Ashley I. Warmeling,

Attorney and Qualified Representative for Minase Tesfateon, Exhibit H, ¶ 8.

45.   An Immigration Judge declared Mr. Tesfateon mentally incompetent due to mental

illness. Immigration Judge Order, Exhibit G, ¶ 4.

46.   Respondents arrested Mr. Tesfateon and placed him in the Farmville Detention Center on

August 3, 2017, based on charges filed by DHS alleging that Mr. Tesfateon should be

removed from the United States. Exhibit H, ¶ 4. As of the date of this filing, Mr.

Tesfateon has been in immigration detention for 349 days.

47.   On June 6, 2018, Immigration Judge Helaine R. Perlman issued an order granting Mr.

Tesfateon withholding of removal to Ethiopia and Eretria, pursuant to 8 U.S.C.

§ 1231(b)(3). Exhibit G. Judge Perlman found that he would likely suffer persecution if

returned to his home country of Ethiopia or if removed to Eritrea.  At the same hearing,

the Department of Homeland Security waived appeal.  *See* Exhibit G (Judge noted DHS

waived appeal). Thus, the order became administratively final on June 6, 2018.

48.   Despite the Immigration Judge ordering that Mr. Tesfateon could not be removed to

Ethiopia and Eritrea, Respondents have not released Mr. Tesfateon from their custody.

49.   If Respondents release Mr. Tesfateon ninety days after the Immigration Judge granted

withholding of removal to Ethiopia and Eritrea, Mr. Tesfateon will have been in ICE custody for a total of 397 days.

50. Mr. Tesfateon has no connection to any country other than the United States and Ethiopia. Mr. Tesfateon has never resided in any other country (other than a period residing in a refugee camp in Kenya more than twenty-six years ago), has no family in any other country, has never worked in any other country, and has never traveled in any country other than the United States and Ethiopia. *See* Exhibit H, ¶ 16.

51. Mr. Tesfateon has complied with all requests made by his assigned Deportation Officer regarding cooperation and provision of information with respect to any attempt by Respondents to remove Mr. Tesfateon from the United States.

*Continued Detention*

52. Respondents have stated that it is now DHS "policy to hold [a detainee] for the entirety of the removal period" following the final order granting them withholding of removal. *See* Exhibit C. Upon information and belief, this policy is not specific to one particular person and applies generally to all detained individuals granted withholding of removal.

53. Attempts by Petitioners to obtain more information about when they will be released from detention despite prevailing on their claims have resulted in similar statements from ICE officials. For instance, a written statement provided to Mr. Sanchez-Acosta by his Deportation Officer indicates August 13, 2018, as his release date. Exhibit B. August 13, 2018, is ninety days from the date the Immigration Judge's order became final.

*Respondents Cannot Remove Petitioners*

54. Respondents have not made and are not making any meaningful efforts to remove Petitioners to any alternative country. *See* Exhibits B, C, and H. Any efforts to remove

12

Petitioners will be futile because Petitioners have no ties to any country other than the countries Respondents have previously designated for Petitioners' respective removal proceedings.

55.    Immigration Judges have ordered that Respondents cannot remove Petitioners to countries that Respondents designated for Petitioners' removal. Immigration Judges have found that Petitioners face persecution if returned to the countries Respondents designated for Petitioners' removal.

56.    Respondents have not designated any additional countries of removal during the Petitioners' removal proceedings before an Immigration Judge.

57.    Respondents have no significant likelihood of removing Petitioners to their respectively designated countries or to any third country in the reasonably foreseeable future.

58.    DHS has given Petitioners no notice or opportunity to respond to removal to any country other than the countries Respondents designated for Petitioners' removal.

59.    DHS has charged Mr. Sanchez-Acosta with removability only to his home country of El Salvador.

60.    DHS has charged Mr. Najjar with removability only to his home country of Palestine.

61.    DHS has charged Mr. Tesfateon with removability only to his home country of Ethiopia and the neighboring country of Eritrea.

62.    DHS did not designate any additional countries of removal for Petitioners. As a result of DHS's charges, Petitioners presented evidence only addressing removability and withholding claims to the countries DHS designated for removal, and the Immigration Judge considered only removability and withholding claims with respect to the countries DHS designated.

*DHS and ICE's Recently Revised Rule to Detain Individuals After a Grant of Withholding of Removal*

63.     DHS and ICE have stated a rule in policy statements and internal guidelines regarding the detention of noncitizens to whom an Immigration Court has granted immigration relief such as withholding of removal pursuant to 1231(b)(3). *See, e.g.*, Memorandum to Anthony Tangeman, Deputy Executive Associate Commissioner, Office of Detention and Removal, from Michael J. Garcia, Assistant Secretary, U.S. Immigration and Customs Enforcement, re "Detention Policy Where and an Immigration Judge has Granted Asylum and ICE has Appealed," dated Feb. 9, 2004. Exhibit I. In such policy statements and guidelines, DHS has previously stated that "[i]n general, it is ICE policy to favor release of aliens who have been granted protection relief by an immigration judge ['such as withholding of removal'] absent exceptional concerns such as national security issues or danger to the community and absent any requirement under law." *Id*.

64.     DHS reiterated in a 2012 memorandum that "it is ICE policy to favor release of aliens who have been granted protection relief by an immigration judge," and stated that that the DHS memorandum at Exhibit I is "still in effect and should be followed" and that "[t]his policy applies at all times following a grant of protection [including withholding of removal], including during any appellate proceedings and throughout the removal process." Message from Gary Mead, Executive Associate Director, Enforcement and Removal Operations, to Assistant Directors, Field Office Directors, Deputy Field Office Directors, and Assistant Field Office Directors, re "Reminder on Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal or CAT," dated Mar. 6, 2012. Exhibit J.

65. On February 20, 2017, the Secretary of DHS issued a new memorandum that confirms this long-standing practice. *See* Memorandum from John Kelly, Secretary, DHS, to Devin McAleenan, Acting Commissioner, U.S. Customs and Border Protection, et al., "Implementing the President's Border Security and Immigration Enforcement Improvements Policies," dated February 20, 2017. Exhibit K. The DHS statement allows for the release on a case-by-case basis "[w]hen [an] alien obtains an order granting relief or protection from removal." *Id*. (Exhibits I, J, and K are collectively referred to as "DHS Rule on Release from Detention"). This rule conforms with prior policy by DHS to release from detention individuals who are granted immigration relief, including withholding of removal.

66. Without complying with required procedures, however, DHS has abruptly changed its Rule on Release from Detention favoring release of individuals granted withholding of removal. A representative of DHS recently stated that "ICE-ERO Washington Policy is to hold Mr. Sanchez for the entirety of the removal period." Exhibit C. Respondents have provided no reasoned explanation for this change in policy.

## LEGAL BACKGROUND

### A.    Notice and a Right to Be Heard in Removal Proceedings

67. The statutory and regulatory framework governing the removal proceedings of noncitizens requires the designation of a primary country for removal and, if applicable, designation of any alternative country during the removal proceedings. *See* 8 U.S.C. § 1231(b)(2).

68. The INA sets out a hierarchy of countries to which an immigrant could be removed. First, the immigrant "may designate one country to which the alien wants to be removed."

8 U.S.C § 1231(b)(2)(A). If an individual does not designate a country, or if the designated country does not timely accept repatriation, the Government may designate a country in which the individual is a citizen or national. 8 U.S.C § 1231(b)(2)(C)-(D). If the individual is not removed to that country, the applicable statute states certain alternative categories of countries to which an immigrant may be removed. *See* 8 U.S.C. § 1231(b)(2)(E); *see also Jama v. ICE*, 543 U.S. 335, 341 (2005).

69.    Regulations implementing the INA require that the Immigration Judge "identify for the record a country, or countries in the alternative, to which the alien's removal may be made pursuant to § 1231(b)(1) of the INA if the country of the alien's designation will not accept him or her into its territory, or fails to furnish timely notice of acceptance, or if the alien declines to designate a country." 8 C.F.R. § 1240.10(f). The regulations recognize that removal to the primary country of removal may not always be possible. *Id.* Thus, 8 C.F.R. § 1240.10(f) requires that alternative countries be designated during the removal proceedings to account for such a possibility.

70.    Further recognizing that country designations need to be made before or during the removal proceeding, implementing regulations for the removal process state that "[n]o commitment of acceptance by the receiving country is required prior to designation of the receiving country" 8 C.F.R. § 241.15(d).

71.    Designating a country for removal before or during the removal proceeding protects basic statutory and constitutional due process rights requiring notice and a hearing to present evidence. Specifically, 8 U.S.C. § 1229a(b)(4) states that in removal proceedings an immigrant shall have a "reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented

by the government"); *see also* U.S. Const., Amend. V; 8 C.F.R. § 1208.2(c)(3);

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985); *Mathews v.*

*Eldridge*, 424 U.S. 319, 332-33 (1976).

72. The U.S. Court of Appeals for the Fourth Circuit has long recognized that it is "well

settled that a fair hearing to [an] alien is a condition precedent to deportation." *Tassari v.*

*Schmucker*, 53 F.2d 570 (4th Cir. 1931). Other federal courts of appeal have similarly

held that "affirming a deportation order without a fair hearing concerning that deportation

violate[s] due process." *Kuhai v INS*, 199 F.3d 909, 913 (7th Cir. 1999); *see also Su Hwa*

*She v. Holder*, 629 958, 965 (9th Cir 2010) ("It follows that a failure to provide notice

and, upon request, stay removal or reopen the case for adjudication of [Plaintiff's]

applications as to Burma would constitute a due process violation if Burma becomes the

proposed country of removal.") A U.S. District Court within this District has also held

that "DHS could not immediately remove petitioners to a third country, as DHS would

first need to give petitioners notice and the opportunity to raise any reasonable fear

claims." *Romero v. Evans*, 280 F.Supp.3d 835, 847 n.24 (E.D. Va. 2017); *see also*, *Diaz*

*v. Hott*, 297 F.Supp.3d 618, 625 (E.D. Va. 2018) ("At the least, DHS would be required

to give petitioners notice and the opportunity for a hearing.").

73. While the government may theoretically remove a noncitizen granted withholding of

removal with respect to a specific country to an alternative country, *see* 8 C.F.R.

1208.16(f), the government must first conduct additional proceedings to determine there

is no longer a basis for the removal to be withheld and obtain the legal authority to effect

a removal. Those separate proceedings would determine whether the noncitizen "will

actually be removed." *Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016).

74.     If the government seeks the authority to remove Petitioners to an alternative country,

        Petitioners may seek withholding of removal as to any other designated alternative

        country. 8 C.F.R. 241.8(e). This is required by the United Nations Convention Against

        Torture ("CAT") prohibiting a government's deportation of an individual to any country

        in which he or she is likely to suffer torture. The United States is a signatory to CAT, and

        CAT protections are codified in the INA and its implementing regulations. *See* 8 U.S.C.

        § 1231(b)(3); 8 C.F.R. §§ 208.16 - 208.18.

75.     In order to ensure a fair hearing, the Immigration Judge must designate the potential

        countries of removal, hear evidence and consider arguments on each potential country of

        removal, and make findings as to each potential country of removal. *See Andriasian v.

        INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject

        to deportation that they have the right to apply for asylum in the United States and for

        withholding of deportation to the country to which they will be deported violates both

        INS regulations and the constitutional right to due process."); *Kossov v. INS*, 132 F.3d

        405, 409 (7th Cir. 1998) (vacating denial of asylum and withholding on the grounds that

        two aliens were deprived of "a full and fair hearing for their claims" as to such a third

        country).

76.     On information and belief, ICE's failure to designate possible third countries of removal

        during proceedings before an Immigration Judge is because there are no viable options

        for removal other than the individual's country of origin.

77.     Because each Petitioner has received an order preventing his removal to specific

        countries designated by Respondents, and Respondents have not designated alternative

        countries to which Petitioners could be removed, there is no administrative process

through which Petitioners could have a full and fair hearing for their claims of protection

from alternative countries or seek release from detention. As a result, there is no further

administrative remedy for which Petitioners could apply, and no administrative or

statutory exhaustion requirement applies. Additionally, "[e]xhaustion is not required

when a petitioner challenges the length of the detention as unreasonable and as a

violation of constitutional rights to due process." *Jarpa v. Mumford*, 211 F.Supp.3d 706,

710 (D. Md. 2016), *citing Aguilar v. Lewis*, 50 F.Supp.2d 539, 541 (E.D.Va.1999) ("there

is no federal statute that imposes an exhaustion requirement on aliens taken into custody

pending their removal").

**B.  Statutory, Regulatory, and Constitutional Limits to Detention**

1.  Statutory Limits on Immigration Detention

78.    Title 8 U.S.C. § 1231(a) governs the detention of an individual with an administratively

final order of removal.

79.    When an Immigration Judge grants withholding of removal, the Judge orders the person's

removal to the identified country, *e.g.*, El Salvador, and then simultaneously prohibits

removal to that country by "withholding" the order of removal because the "alien's life or

freedom would be threatened" on account of certain grounds enumerated in the INA. 8

U.S.C. § 1231(b)(3).

80.    The INA permits DHS to detain an immigrant during the "removal period," 8 U.S.C.

§§ 1231(a)(1)(A); 1232(a)(2), which is defined as the 90-day period following the

issuance of a final order of removal.  8 U.S.C. § 1231(a)(1)(A) states that "when an alien

is ordered removed, the Attorney General shall remove the alien from the United States

within a period of 90 days (in this section the 90-day period is referred to as the 'removal

period')."

81.   The same statutory provision, however, recognizes a specific exception for noncitizens granted "withholding of removal." As set forth above, 8 U.S.C. § 1231(b)(3) authorizes an Immigration Judge to grant "withholding of removal" when he or she determines that the "alien's life or freedom would be threatened" because of certain enumerated grounds.

82.   A noncitizen granted withholding of removal pursuant to 8 U.S.C. § 1231(b)(3) is therefore not subject to detention under § 1231(a)(2) because the noncitizen fits within an exception to the statutory definition of noncitizens detained during the "removal period."

83.   The detention authority provided by § 1231(a) applies only to noncitizens who have been ordered removed to a country and does not apply to individuals in any of the enumerated exceptions, including withholding of removal stated in § 1231(b)(3).

84.   Section 1231(a) does not authorize a noncitizen's continued detention for the government to explore possibilities of removal to countries that have not been designated in removal proceedings and for which the noncitizen has received no notice of designation for removal or been afforded an opportunity to present information and argument on removal to that county.

2.   Regulatory Limits on Immigration Detention

85.   8 C.F.R. § 241.13 states the obligations of Respondents when "there is no significant likelihood of removal to the country to which [a noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future."

86.   If DHS determines that there is no significant likelihood of a noncitizen's removal in the reasonably foreseeable future, the regulations instruct DHS to release the noncitizen on an order of supervision. 8 C.F.R. § 241.13(h) ("Conditions of release"); *see also* 8 C.F.R. § 241.5 ("Conditions of release after removal period"). If DHS determines that there is

20

no significant likelihood of a noncitizen's removal in the reasonably foreseeable future, the regulations instruct DHS to release the noncitizen on an order of supervision. 8 C.F.R. § 241.13(h) ("Conditions of release"); *see also* 8 C.F.R. § 241.5 ("Conditions of release after removal period").

### 3. Constitutional Limits on Immigration Detention

87. Constitutional limits on detention are well established. The Supreme Court has stated that the purpose of detention during the removal period is to "secure the alien's removal," *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized." *Id*. at 680. "[W]here detention's goal is no longer practically attainable, detention no longer 'bear[s][a] reasonable relation to the purpose for which the individual [was] committed.'" *Id*. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

88. Government detention violates due process unless it is reasonably related to a legitimate government purpose. *Zadvydas*, 533 U.S. at 701. If the Government detains the noncitizen for more than a brief time without a government purpose when the government cannot effect removal, the detention violates Constitutional guarantees of due process. *Id*.; *Demore v. Kim*, 538 U.S. at 553 ("detention of aliens would not serve a legitimate immigration purpose if there were no 'significant likelihood of removal in the reasonably foreseeable future'").

89. The Supreme Court has held that where there is no possibility of removal, immigration detention presents substantive due process concerns because (a) the need to detain the noncitizen to ensure the noncitizen's availability for future removal proceedings is "weak or nonexistent," and (b) there is no need to protect the community without a finding that

the noncitizen is dangerous. *Zadvydas*, 533 U.S. at 690-92. Detention is lawful only when "necessary to bring about that alien's removal." *Id*. at 689.

90.     The Supreme Court has also affirmed that where there is no significant likelihood of removal in the reasonably foreseeable future, detention is not reasonably related to a legitimate government interest. *Demore v. Kim*, 538 U.S. 510 (2003) ("detention of [noncitizens] would not serve a legitimate immigration purpose if there were no 'significant likelihood of removal in the reasonably foreseeable future.'" *Id*. at 553, *quoting Zadvydas*, 533 U.S. at 701; *see also Mauricio-Vasquez v. Crawford*, 2017 WL 1476349 (E.D. Va. 2017); *Jarpa v. Mumford*, 211 F.Supp.3d 706 (D. Md. 2016).

**C.     Agency Rule-Making Requirements**

91.     An agency modifying or altering a rule must provide adequate reasons for that change. "One of the basic procedural requirements of administrative rulemaking is than an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 136 U.S. 2117, 2125 (2016). If the agency "provides an explanation of its decision that includes a rational connection between the facts found and the choice made," a court may uphold the agency's decision. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars*, 136 U.S. at 2125 (*citing State Farm*, 463 U.S. at 42–43).

92.     "The same principles apply to a change in agency position" regarding immigration rules and policy. *Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 298 (4th Cir. 2018); *see also*

*Judulang v. Holder*, 565 U.S. 42, 55 (2011) ("agency action must be based on non-arbitrary, 'relevant factors,'… which here means that the [government's] approach must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system"), *citing Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29 (1983).

93.    At a minimum, an agency must "display awareness that it is changing position and show that there are good reasons for the new policy." *Jimenez-Cedillo*, 885 F.3d at 298, *quoting Encino Motorcars*, 136 U.S. at 2126. "In explaining its changed position, an agency must also be cognizant that long-standing policies may have engendered serious reliance interests that must be taken into account." *Id*. A "reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Encino Motorcars*, 136 U.S. at 2126. An "unexplained inconsistency" in agency policy indicates that the agency's action is arbitrary and capricious, and therefore unlawful. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 981 (2005); *Jimenez-Cedillo*, 885 F.3d at 298; *Judulang*, 565 U.S. at 50 (immigration decisions cannot be a "sport of chance…that is what the APA's 'arbitrary and capricious' standard is designed to thwart.") (citations omitted).

**Class Action Allegations**

94.    Petitioners bring this class action on behalf of themselves and all others similarly situated for the purpose of asserting claims on a common basis.

95.    The class that Petitioners seek to represent is defined as follows: All individuals:

a.    who have an administratively final grant of withholding of removal under 8 USC § 1231 at any time on or after July 20, 2018; and

    b.   who are detained by or on the authority of Respondents in Virginia at any time on or after July 20, 2018; and

    c.   who have not been charged in a Notice to Appear or Notice of Reinstatement of Removal, any similar charging document, or through other means in immigration court as being removable to any country other than a country to which their removal was withheld.

96.    Petitioners reserve the right to amend the class definitions if discovery or further investigation reveals that the class should be expanded or otherwise modified.

97.    Petitioners reserve the right to establish sub-classes as appropriate.

98.    This action is brought and properly may be maintained as a class action under Fed. R. Civ. P. 23(a)(1)-(4).

99.    <u>Numerosity</u>: On information and belief, there are at least three to four individuals per month who are granted withholding of removal while detained by ICE in Virginia, totaling at least thirty-six individuals in a twelve-month period, rendering the proposed class so numerous that joinder of all members is impracticable. Declaration of Kelly White, <u>Exhibit L</u>,¶ 9. Based on the U.S. government's current detention and removal policies, the size of the class will continue to grow.

100.    <u>Commonality</u>: There are multiple questions of law and fact common to the members of the proposed class. These common questions include whether Respondents are restricted from removing Petitioners and the proposed class members under 8 U.S.C. § 1231(b)(3) because there is no country to which they can be removed; whether Petitioners and the proposed class members are not in the removal period permitting detention and should be released under 8 C.F.R. §241.13; whether Petitioners' and the proposed class members'

procedural and substantive due process rights are being violated by remaining

unnecessarily detained by Respondents; whether the detention policy imposed by

Respondents on Petitioners and the proposed class members followed the proper rule-

making procedures; and whether the detention policy imposed by Respondents on

Petitioners is arbitrary and capricious.

101.  Typicality: Petitioners' claims are typical of the claims of the proposed class, as all are

subject to unnecessary detention based on the same arbitrary and erroneous legal

interpretation of the U.S. government.

102.  Adequacy: Petitioners will fairly and adequately protect the interests of the proposed

class. Petitioners' claims are identical to the members of the proposed class, they have no

relevant conflicts of interest with other members of the proposed class, and they have

retained competent counsel experienced in class-action and immigration law.

103.  This action is brought and properly may be maintained as a class action under Federal

Rule 23(b)(1), (b)(2), or (b)(3).

104.  Separate actions by or against individual class members would create a risk of

inconsistent or varying adjudications regarding the proposed class members' common

legal question: whether persons who have been granted withholding of removal to the

country or countries designated during removal proceedings but remain detained by

Respondents in Virginia are entitled to release under 8 C.F.R. § 241.13.

105.  The U.S. government presently takes the position that they will not follow their longtime

practice of releasing individuals granted withholding of removal and instead will hold

them for the entirety of the maximum possible ninety-day removal period.  Thus,

Respondents have acted or refused to act on grounds that apply generally to the proposed

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed class as a whole.

106.   Common questions of law or fact predominate over questions affecting only individual members, and a class action is thus superior to other available methods for fairly and efficiently adjudicating the controversy. Individual class members do not have a strong interest in bringing individual lawsuits; even if individual class members had the resources to do so, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties, and to the court. Respondents have engaged in a common course of conduct, and the class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' common claims in a single forum.

## CLAIMS

### FIRST CLAIM FOR RELIEF

**Immigration and Nationality Act, 8 U.S.C. §§ 1231(a)
and 1240.10(f) (Actions Unauthorized by Statute)**

107.   Petitioners and class members re-allege and incorporate by reference the preceding paragraphs.

108.   Title 8 U.S.C. § 1231(a) does not authorize Petitioners' detention, or that of the class members, nor do any other detention statutes within the INA.

109.   Because an Immigration Judge has determined that Petitioners and the class members cannot be removed to any country Respondents have designated for their removal during removal proceedings, Respondents are legally incapable of removing them from the United States.

110.    Title 8 U.S.C. § 1229a(b)(4)(B) states that an immigrant shall have a "reasonable

opportunity to examine the evidence against the alien, to present evidence on the alien's

own behalf, and to cross-examine witnesses presented by the government." *See also* 8

C.F.R. § 1208.2(c)(3) (regulations implementing the INA).

111.    Respondents have not designated any alternative country to which Respondents can

remove Petitioners or the class members during removal proceedings.

112.    Respondents and the Immigration Judge adjudicating Petitioners' removal proceedings

designated specific countries for the removal of each Petitioner and each class member.

Respondents and the Immigration Judge did not designate any alternative country or

countries for Petitioners' possible removal, nor did DHS allege an alternative country for

removal. The Immigration Judge did not hear evidence or argument concerning

Petitioners' removal to an alternative country.

113.    Any attempt by Respondents to remove Petitioners and the class members to countries

that have not been designated before or during the removal proceeding violates the

requirement in 8 U.S.C. § 1240.10(f) that the Immigration Judge designate all countries

of removal and does not provide Petitioners and the class members an opportunity to

present evidence and argument on removal to a specific country.

114.    Respondents have not provided Petitioners and the class members notice of any

alternative country to which Respondents might seek to remove them.

115.    A lack of notice of alternative removal countries makes it impossible for Petitioners and

the class members to present a defense related to removal to that unspecified alternative

country, as applicable statutes require.

116.    To remove Petitioners and the class members to any other country, Respondents must

obtain a new order that authorizes removal to that country. If the government seeks such authorization, Petitioners and the class members may seek withholding of removal relief as to that third country. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 241.8(e).

117.   The possibility of removing Petitioners and the class members to an alternative country where Petitioners and the class members have never resided and never visited is so remote that Respondents do not have a legitimate government purpose to continue Petitioners' and the class members' detention.

118.   Because DHS's efforts to remove Petitioners and the class members are currently foreclosed, Petitioners' and the class members' continued detention is not authorized by 8 U.S.C. § 1231(a)(1). That statute defines the removal period as the period of time when "the Attorney General shall remove the alien." *Id*. Detention under § 1231(a) is only allowed in order for the Government to effect a noncitizen's removal.

119.   There is no significant likelihood of Petitioners' and the class members' removal in the reasonably foreseeable future. Regulations implementing the INA provide that, if there "is good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future," Respondents should release the individual under an order of supervision. 8 C.F.R. §§ 241.4(i)(7) and 241.13.

120.   Respondents cannot effect Petitioners' and the class members' removal to the designated country for removal, nor can the Government remove Petitioners and the class members to an undesignated alternative country without violating the statutory and regulatory requirements for removal proceedings.

121.   Respondents' continued detention of Petitioners and the class members therefore violates the INA and the regulations implementing the INA.

## SECOND CLAIM FOR RELIEF
### Procedural Due Process

122.   Petitioners and the class members re-allege and incorporate by reference the preceding paragraphs.

123.   Petitioners and the class members are entitled to procedural due process protections. *See Reno v. Flores*, 507 U.S. 292, 306 (1993); *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).

124.   In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court weighed the private individual's interest and the risk of erroneous deprivation of that interest against the government's interest and determined that procedural safeguards were necessary to preserve constitutional due process.

125.   Petitioners and the class members have an interest in being free from physical restraint, which "lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (*citing Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

126.   Respondents are unlawfully depriving Petitioners and the class members of their liberty. The Due Process Clause protects against even short detentions. There must be protections "in a case that actually leads to imprisonment even for a brief period." *Argersinger v. Hamlin*, 407 U.S. 25, 33 (1972).

127.   DHS has given Petitioners and the class members no notice or opportunity to respond to removal to any country other than countries Respondents have previously designated for Petitioners' and the class members' removal. DHS charged Petitioners and the class members only with removability to specific countries. As a result of DHS's charges,

29

Petitioners and the class members have presented evidence to address their removability and withholding claims only to those specific countries, and the Immigration Judge considered only their removability and withholding claims to those specific countries.

128.   Removal to a third country, without giving Petitioners and the class members the opportunity to contest their removal and to seek protection from removal to a possible third country, violates Petitioners' and the class members' statutory and constitutional rights.

129.   Respondents have unlawfully continued Petitioners' and class members' detention after an Immigration Judge ordered that Respondents could not remove Petitioners or class members' from the United States. For all of that time, Petitioners' and the class members' detention has been and will remain unlawful.

130.   Respondent's continued detention of Petitioners and the class members deprives them of their right to procedural due process.

### THIRD CLAIM FOR RELIEF
### Substantive Due Process

131.   Petitioners and the class members re-allege and incorporate by reference the preceding paragraphs.

132.   Petitioners and the class members are entitled to substantive due process protections while in the custody of Respondents in immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 689-90 (2001).

133.   Petitioners and the class members have an interest in being free from physical restraint, which "lies at the heart of the liberty [the Due Process] Clause protects." *Id*. at 690. Respondents are unlawfully depriving Petitioners and the class members of their liberty.

134. Immigration Judges have ordered that Petitioners and the class members cannot be removed to the countries Respondents designated for removal.

135. Respondents continue to detain Petitioners and the class members and have stated to at least one named plaintiff that it is their policy to hold [him] for the entirety of "the removal period."

136. The "removal period" is a reference to a ninety-day period applicable to individuals who have been ordered deported but who have not received an order withholding removal. Detention during the "removal period" is not authorized for individuals like Petitioners who have received withholding of removal.

137. There is no significant possibility that Respondents can remove Respondents to another country in the reasonably foreseeable future.

138. Immigration detention is lawful only when "necessary to bring about [an] alien's removal." *Zadvydas*, 533 U.S. at 689.

139. Government detention violates due process unless it is reasonably related to a legitimate government purpose. *Zadvydas*, 533 U.S. at 701. If the government detains the noncitizen for more than a brief time without a legitimate purpose when the government cannot effect removal, the detention violates constitutional guarantees of due process. *Id*.; *Demore v. Kim*, 538 U.S. at 553.

140. There is no legitimate government interest in Respondent's continued detention of Petitioners and the class members.

141. Respondents' continued detention of Petitioners and the class members after an Immigration Judge has ordered that Petitioners and the class members cannot be removed to countries designated by Respondents and there is no substantial likelihood that

Respondents can remove Petitioners and the class members to another country in the reasonably foreseeable future, violates Petitioners' and the class members' substantive due process right to freedom from incarceration.

## FOURTH CLAIM FOR RELIEF
### Administrative Procedure Act, 5 U.S.C. § 553 (Rule-Making)

142. Petitioners and the class members re-allege and incorporate by reference the preceding paragraphs.

143. The APA requires this Court to hold unlawful and set aside any agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

144. DHS is an "agency" under the APA. 5 U.S.C. § 551(1).

145. Agency rules must go through notice-and-comment procedures. 5 U.S.C. § 553.

146. Respondents have previously issued statements directing that individuals who have been granted relief by an Immigration Judge such as withholding of removal should be released from detention. Respondents' prior statements are a "rule" under the APA. 5 U.S.C. § 551(4).

147. Respondents have stated to at least one named plaintiff that it is their "policy to hold [him] for the entirety of the removal period."

148. Respondents have materially altered a rule without complying with the public notice and comment process and period required by the APA. Respondents' alteration of the rule affecting detention of noncitizens granted immigration relief is therefore unlawful under 5 U.S.C. § 553.

149. Respondents' DHS Rule on Release from Detention has been stated, followed by Respondents, and relied upon by detained noncitizens for a minimum of eighteen years, dating from the earliest statement of this rule. Respondents have now substantially altered

that rule without explaining any basis for that rule change and without providing public

notice of the proposed change and an opportunity for public comment.

150.   Respondents' actions constitute "final agency action" reviewable under the APA.

5 U.S.C. § 704.

151.   Respondents' violation of APA rule-making requirements has caused and continues to

cause substantial harm to Petitioners and the class members by unlawfully prolonging

their detention in Respondents' custody.

## FIFTH CLAIM FOR RELIEF
### Administrative Procedure Act, 5 U.S.C. § 706 (Arbitrary and Capricious Agency Action)

152.   Petitioners and the class members re-allege and incorporate by reference the preceding

paragraphs.

153.   The APA requires this Court to hold unlawful and set aside any agency action that is "(A)

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;  (B)

contrary  to  constitutional  right,  power,  privilege,  or immunity;  [or]  (C)  in  excess

of  statutory  jurisdiction,  authority,  or  limitations,  or short of statutory right."  5 U.S.C.

§ 706(2).

154.   Respondents have previously issued public statements and internal policy guidelines

directing DHS to release from detention noncitizens who granted relief by an

Immigration Judge such as withholding of removal. Respondents have not provided any

reasoned explanation for changing this policy.

155.   This change has substantially and adversely affected Petitioners and the class members as

there are no alternative countries of removal designated by Respondents, yet Petitioners

remain in detention until an arbitrary point in time.

156.   Respondents have stated in regard to at least one Petitioner that it is their "policy to hold [him] for the entirety of the removal period."

157.   Respondents have arbitrarily and capriciously and without explanation continued Petitioners' and the class members' detention in violation of 5 U.S.C. § 706.

158.   Respondents' actions constitute a "final agency action" under the APA.  5 U.S.C. § 704.

159.   Respondents' arbitrary and capricious actions have caused and are causing substantial harm to Petitioners by unlawfully prolonging their detention in Respondents' custody.

## PRAYER FOR RELIEF

Wherefore, Petitioners, on behalf of themselves and all others similarly situated respectfully ask the Court to:

1.     Assume jurisdiction over this matter;

2.     Declare that no statute or regulation permits Petitioners' and class members' continued detention;

3.     Declare that Petitioners' and class members' continued detention without authority violates Petitioners' and class members' substantive and procedural due process rights;

4.     Grant the writ of habeas corpus and order that Respondents release Petitioners and class members from detention;

5.     Order Respondents to identify all class members to class counsel, and also to advise all class members and their attorneys of record of their status as class members in this action;

6.     Declare that Respondents' actions violate the Administrative Procedure Act;

7.     Order that the Government reimburse the attorneys' fees and expenses incurred in connection with this Petition, under the Equal Access to Justice Act 5 U.S.C. § 504, 28 U.S.C. § 2412; and

8.     Grant any other and further relief that this Court deems just and proper.

Respectfully submitted,

Dated:  July 20, 2018

By: /s/ Adina Appelbaum
Adina Appelbaum, VSB. No. 88974
David J. Laing (pro hac vice application pending)
Claudia Cubas (pro hac vice application pending)
Capital Area Immigrants' Rights (CAIR) Coalition
1612 K Street NW
Suite 204
Washington, DC 20006
(202) 769-5231 (Tel.)
(202) 331-3341 (Fax)
    Pro Bono Attorneys for Petitioner


Jonathan Smith (pro hac vice application forthcoming)
Sirine Shebaya (pro hac vice application pending)
Senior Staff Attorney
Muslim Advocates
P.O. Box 66408
Washington, DC 20035
sirine@muslimadvocates.org
(202) 897-2622 (Tel.)
    Pro Bono Attorney for Petitioner


Rachel C. McFarland, VSB No. 89391
*rmcfarland@justice4all.org*
Simon Sandoval-Moshenberg, VSB No. 77110
*simon@justice4all.org*
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike #520
Falls Church, VA 22041
(703) 778-3450
Fax: (703) 778-3454
    Pro Bono Attorneys for Petitioner