IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| Julio Cesar Sanchez-Acosta, *et al.* | ) | |
| | ) | |
| *Petitioners-Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jefferson B. Sessions, III, *et al.* | ) | Civ. No.: 1:18-cv-00872-LO-IDD |
| | ) | |
| *Respondents-Defendants.* | ) | |
| | ) | |
| | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION FOR CLASS
CERTIFICATION OR REPRESENTATIVE HABEAS ACTION**

## I.    INTRODUCTION

When a noncitizen is placed into removal proceedings, the government must first

designate a country or countries to which it seeks to remove him.  The noncitizen may then seek

"withholding of removal" as to that country or countries, as a defense against deportation.  In

order to obtain a grant of withholding of removal as to any particular country, an individual must

prove that he is likely to suffer persecution on account of a legally-protected ground (race,

religion, political opinion, nationality, or membership in a particular social group) were he

removed to that country. When an immigration judge grants withholding of removal, she will

order the noncitizen removed, but also enter an order withholding his removal as to a particular

country or countries. A grant of withholding of removal absolutely prohibits the government

from removing a noncitizen to any country as to which his removal has been withheld.

Petitioners, and the class they hope to represent, have all been granted an order from an immigration judge withholding their removal as to every country that the government designated in each of their cases. Accordingly, the government is legally prohibited from removing any one of them from the United States. If the government were to designate another country of removal, the individuals would have the opportunity to apply for withholding of removal as to that country or other appropriate immigration relief.  Petitioners have prevailed in their immigration cases, and the Immigration Judge has decided that the Petitioners will not be removed to the countries to which the government sought to remove them.  Nevertheless, Respondents continue to detain Petitioners in immigration jails.

The central question raised in Petitioners' Amended Petition for a Writ of Habeas Corpus (Dkt. No. 10) is whether an individual who has been ordered removed but granted withholding of removal as to every country which the government designated for removal, and thus cannot legally be removed from the United States, is nonetheless in the 90-day removal period contemplated by 8 U.S.C. § 1236(a)(1)(A) during which the government "shall remove" him; or whether, for a person who cannot legally be removed from the United States, it is nonsensical to state that he is in a period in which the government "shall remove" him, and thus continued detention is not warranted.  Such a question of statutory interpretation is amenable to resolution on a classwide basis, as set forth herein.[1]

To protect the liberty interests of similarly situated noncitizens within the Court's jurisdiction, Petitioners respectfully ask the Court to certify a class of all individuals:

- who have an administratively final grant of withholding of removal under 8 U.S.C. § 1231 at any time on or after July 20, 2018;

---

[1] Petitioners also raise substantial constitutional claims (and constitutional avoidance arguments in support of their statutory interpretation) involving their procedural and substantive due process rights, and finally challenge Respondents' change to their policy regarding detention of individuals granted withholding of removal without first having followed the requirements of the Administrative Procedures Act.

- who are detained by or on the authority of ICE in Virginia at any time on or after July 20, 2018; and
- who have not been charged in a Notice to Appear or Notice of Reinstatement of Removal, any similar charging document, or through other means in immigration court, as being removable to any country other than a country to which their removal was withheld.

As addressed in more detail below, the proposed class fully satisfies the requirements of Rule 23.  The class is sufficiently numerous that joinder is impracticable.  The putative class seeks resolution of a common question of law—*i.e.*, whether persons who have been granted withholding of removal but remain detained are entitled to release.  Petitioners, like all class members, have been granted withholding of removal by an immigration judge, and there is no country to which they can be removed, yet they remain detained.  With the assistance of experienced counsel, Petitioners are able to fairly and adequately protect the interests of the class.  Finally, because respondents have acted or refused to act on grounds that apply generally to the class, certification of the putative class is also appropriate under Rule 23(b)(2).

In light of the "categorical rule entitling a plaintiff whose suit meets the specified criteria [of Rule 23] to pursue his claim as a class action," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010), numerous courts have certified habeas classes.  *See, e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1111 (9th Cir. 2010) (reversing denial of certification of habeas class of noncitizens detained during immigration proceedings for more than six months without bonding hearings); *Diaz v. Hott*, 297 F.Supp.3d 618, 626-28 (E.D. Va. 2018) (certifying habeas class of individuals in withholding-only proceedings seeking bond hearings); *Hamama v. Adducci*, 2018 WL 263037, at *19 (E.D. Mich. Jan. 2, 2018) (certifying habeas class of Iraqi nationals subject to final orders of removal and seeking relief from detention pending removal); *Saravia v. Sessions*, 2017 WL 5569838, at *20 (N.D. Cal. Nov. 20, 2017) (certifying nationwide class of unaccompanied minors arrested by DHS and placed in custody of Office of Refugee

3

Resettlement); *Reid v. Donelan*, 297 F.R.D. 185 (D. Mass. 2014) (certifying class of noncitizens in withholding-only proceedings detained in excess of six months); *Death Row Prisoners of Pa. v. Ridge*, 169 F.R.D. 618, 620 (E.D. Pa. 1996) (certifying habeas class action challenging state's status under Antiterrorism and Effective Death Penalty Act).  The same result is warranted here.

## II.   BACKGROUND

### A.   Statutory and regulatory framework

When a noncitizen is placed in removal proceedings, he may have a number of potential defenses.  One of these is withholding of removal.  Pursuant to 8 U.S.C. § 1231(b)(3), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of [a protected ground]."  This provision of law implements the United States' treaty obligations under the United Nations Protocol Relating to the Status of Refugees.  If an immigration judge grants an individual withholding of removal, the individual is entitled to remain and work in the United States.  The country to which withholding of removal is granted may be the individual's home country or, if the government has designated one, a third country to which the individual has other connections.  8 U.S.C § 1231(b)(2).  Before an individual can be removed to any third country, however, he must be given the opportunity to present evidence as to his fear of being removed to that country as well.  8 U.S.C. § 1229a(b)(4); *Romero v. Evans*, 280 F.Supp.3d 835, 847 n.24 (E.D.Va. 2017)); *see also Diaz*, 297 F.Supp.3d at 625.  An individual cannot be removed to a country from which they have not been given the opportunity to seek withholding of removal.  This means that the immigration judge must designate the countries to which the government is seeking to remove the individual, so that the individual can request withholding of removal if applicable.  *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

Generally, when a noncitizen is ordered removed, he enters a 90-day "removal period" during which the government "shall remove" him.  8 U.S.C § 1231(a)(1)(A).  But for noncitizens granted withholding of removal as to all countries to which they were charged as being removable, the government is legally prohibited from removing them.  Petitioners' central contention in this case is that for noncitizens who *cannot* be removed, they are not within a period during which they *shall* be removed.  They are not in the removal period at all.

After the removal period ends, under 8 C.F.R. § 241.13(g)(1), when there is no "significant likelihood of removal in the reasonably foreseeable future," the government "shall promptly make arrangements for the release of the alien subject to appropriate conditions."  If there is no country that has been designated as a country for removal for which the individual had an opportunity to seek withholding of removal and for which withholding of removal was denied, there is no significant chance—in fact, there is virtually no chance—of removal in the reasonably foreseeable future, and the regulations demand release, as the individual cannot be removed and is not in a removal period.

Furthermore, procedural and substantive due process demand release from prolonged immigration detention when there is significant likelihood of removal in the reasonably foreseeable future.  By holding individuals in prolonged detention to effect removal to a theoretical third-country for which the individual has not had the opportunity to present a defense, Respondents violate individuals' due process rights.  Detention without a legitimate purpose violates due process as it deprives an individual of liberty; the Supreme Court has stated that the purpose of detention during the removal period is to "secure the alien's removal," *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized." *Id*. at 680.

Finally, Respondents' actions violate the Administrative Procedure Act. Continued detention of Petitioners' contradicts a long-standing policy. For decades, Respondents have published and followed a rule that individuals granted withholding of removal should be released. *See* Memorandum from John Kelly, Secretary, DHS, to Devin McAleenan, Acting Commissioner, U.S. Customs and Border Protection, et al., "Implementing the President's Border Security and Immigration Enforcement Improvements Policies," dated February 20, 2017; Message from Gary Mead, Executive Associate Director, Enforcement and Removal Operations, to Assistant Directors, Field Office Directors, Deputy Field Office Directors, and Assistant Field Office Directors, re "Reminder on Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal or CAT," dated Mar. 6, 2012; Memorandum to Anthony Tangeman, Deputy Executive Associate Commissioner, Office of Detention and Removal, from Michael J. Garcia, Assistant Secretary, U.S. Immigration and Customs Enforcement, re "Detention Policy Where an Immigration Judge has Granted Asylum and ICE has Appealed," dated Feb. 9, 2004.  Dkt. Nos. 10-10, 10-11, 10-12.  Respondents have now abruptly changed that long-standing rule without following required notice-and-comment procedures.  *See* E-mail communication from Detention Officer Frank Corcoran, ICE-Enforcement and Removal Operations, DHS, to David J. Laing, counsel for Mr. Sanchez-Acosta, dated July 6, 2018.  Dkt. No. 10-4.  Respondents made this policy change, which has been applied to Petitioners, arbitrarily and capriciously and without articulating any justification for the change. All of Petitioners' actions with respect to this policy change violate the Administrative Procedure Act.

## B.     Named Plaintiffs

Each of the named plaintiffs has been granted withholding of removal as to every country which the government sought to remove him, but remains detained due solely to the government's erroneous determination that he is nonetheless still in the 90-day removal period.

6

*1.*      **Julio Cesar Sanchez-Acosta**

Petitioner Julio Cesar Sanchez-Acosta is a citizen of El Salvador who came to the United States in 2016. Dkt. No. 10, ¶ 21. He lives with his daughter and granddaughter in Virginia. *Id.* ¶ 22. He was detained by ICE on November 16, 2017, and has remained in custody at the Farmville Detention Center since that date. *Id.* ¶¶ 21-23. Mr. Sanchez-Acosta applied for asylum and withholding of removal based on family ties and was granted withholding of removal to El Salvador on May 15, 2018. *Id.* ¶¶ 24-25. The order became administratively final on the same day. *Id.* ¶ 25. He has no ties to any other country. *Id.* ¶ 31. Mr. Sanchez-Acosta's attorney, David Laing, was told by ICE that it was the ICE-ERO Washington policy to hold individuals for the entire removal period. *Id.* ¶ 28.

*2.*      **Khaled Najjar**

Petitioner Khaled Najjar is a citizen of Palestine who came to the United States more than fourteen years ago. *Id.* ¶¶ 34-35. He lives with his wife and three sons in Virginia. *Id.* ¶ 35. He was detained by ICE on April 27, 2017, and has remained in custody at Farmville Detention Center since that date. *Id.* ¶¶ 30, 36. Mr. Najjar was granted withholding of removal to Palestine on June 1, 2018, because of an imputed religious affiliation. *Id.* ¶¶37-38. The order became administratively final on the same day. *Id.* ¶ 37. He has never lived in any other country. *Id.* ¶ 40. His custody will not be reevaluated, per ICE, until August 19, 2018, and as of the date of this filing, no release date has been set. *Id.* ¶ 41.

*3.*      **Minase Tesfateon**

Petitioner Minase Tesfateon is a citizen of Ethiopia who came to the United States in 1992 as a refugee and later became a lawful permanent resident. *Id.* ¶ 44. Mr. Tesfateon has been declared mentally incompetent by an immigration judge. *Id.* ¶ 45. He was detained by ICE on August 3, 2017, and has remained in custody at Farmville Detention Center since that date.

*Id.* ¶¶ 44, 46.  He was granted withholding of removal to Ethiopia and Eritrea on June 6, 2018.

*Id.* ¶ 47.  The order became administratively final on the same day.  *Id.* ¶ 47.

## III.   ARGUMENT

A plaintiff whose suit meets the requirements of Federal Rule of Civil Procedure 23 has a

"categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A.*,

559 U.S. at 398.  Rule 23(a) provides that a class may be certified if it meets four requirements:

"(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  As set forth below, the

proposed class fully satisfies each of these requirements.  In addition, the class satisfies the

requirements of certification under Rule 23(b)(2), as respondents have acted or refused to act on

grounds that apply generally to the class.

### A.   The Requirements of Rule 23(a) are Fully Satisfied

#### 1.   The Class is Sufficiently Numerous

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1).  No fixed number of class members is required.  *Id.*

Instead, the numerosity requirement "is based on considerations of due process, judicial

economy, and the ability of claimants to institute suits." William B. Rubenstein, *Newberg on

Class Actions*, § 3:11 (5th ed. 2017).  The Fourth Circuit has held that classes as small as 18

members are sufficient to satisfy the numerosity requirement of Rule 23. *Knight v. Lavine*, Civ.

No. 1:12-CV-611, 2013 WL 427880, at *2 (E.D. Va. Feb. 4, 2013) (citing *Cypress v. Newport

News Gen. & Nonsectarian Hosp. Assoc.*, 375 F.2d 648, 653 (4th Cir.1967)).  *Cf. Barnes v.

District of Columbia*, 242 F.R.D. 113, 121 (D.D.C. 2007) ("[I]n most cases a class of at least

forty members presumptively satisfies the impracticability of joinder requirement, though classes as small as twenty might be appropriate. If a plaintiff can provide a reasonable basis supporting an estimate, this will suffice instead of an exact figure." (Internal citations omitted.));

In addition to the individuals in withholding-only proceedings currently detained in Virginia, the numerosity requirement is met because the class consists of numerous, unknown future class members who will be denied the ability to seek release on bond under the challenged policies and practices.  Given the high rates of removal proceedings, the number of future class members can only grow.  Courts have repeatedly held that the guaranteed presence of such future unidentified class members renders joinder inherently impractical. *See, e.g.*, *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014) (explaining, in finding numerosity and certifying a class of detained plaintiffs, that "when a party seeks only declaratory or injunctive relief, . . . the inclusion of future members increases the impracticability of joinder"); *Ali v. Ashcroft*, 213 F.R.D. 390, 408-09 (W.D. Wash. 2003) ("[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met,' regardless of class size.") (quoting *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986)); *Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001) ("The joinder of potential future class members who share a common characteristic, but whose identity cannot be determined yet is considered impracticable.").

Here, the Capital Area Immigrants' Rights Coalition has been in contact with what is estimated as at least twenty to twenty-four individuals who remain detained in Virginia after a withholding of removal grant since December 2017 andsees three to four new cases a month. Dkt. No. 10-13, ¶ 11.  Over the course of a year, that would put the size of the class at thirty-six to forty-eight individuals, which is above the number Fourth Circuit law makes clear is so high

that joinder is usually presumed to be impracticable.  *See, e.g., Talbott v. GC Servs. Ltd. P'ship*,

191 F.R.D. 99, 102 (W.D. Va. 2000) ("Where the class is twenty-five or more, joinder is usually

presumed impracticable.").  The numerosity requirement is therefore satisfied on these facts

alone.

Joinder of such current and future putative class members is also impracticable because

the class consists of a revolving detainee population. *See J.D. v. Nagin*, 255 F.R.D. 406, 414

(E.D. La. 2009) ("The mere fact that the population of the [Youth Study Center] is constantly

revolving during the pendency of litigation renders any joinder impractical.").  Transfers can

occur even after relief is granted.  The two primary ICE detention facilities in Virginia are ICA-

Farmville, where Plaintiffs are currently detained, and Virginia Peninsula Regional Jail in

Williamsburg. From October 2014 through September 2015, the most recent period for which

data is available, a substantial portion of detainees at each location were transferred to other ICE

facilities:

- At ICA Farmville, 1,884 detainees out of an overall annual population of 2,900 detainees were transferred to other ICE facilities during this period.[2]

- At Virginia Peninsula Regional Jail during the same period, 384 people were detained, and almost all of them, 336, were transferred to other ICE detention facilities.[3]

As another district court concluded in certifying a class of immigration detainees, "joinder is

impracticable . . . because class members are 'transitory' (*e.g.*, they may be transferred to other

---

[2] *Transfers of ICE Detainees from the Farmville Detention Center – Ica*, TRAC Immigration, http://trac.syr.edu/immigration/detention/201509/FRMVLVA/tran/ (last visited July 20, 2018). ICA-Farmville ranks "in the top 11 percent nationwide in the number of individuals transferred to other ICE facilities." *Id.*
[3] *Transfers of ICE Detainees from the Virginia Peninsula Regional Jail*, TRAC Immigration, http://trac.syr.edu/immigration/detention/201509/VPREGVA/tran/ (last visited July 20, 2018). Virginia Peninsula Regional Jail ranks in the top 35 percent of ICE detention centers nationwide for detainee transfers. *Id.*

facilities, they may be removed, or they may be permitted to stay)." *Lyon v. ICE*, 300 F.R.D. 628, 636 (N.D. Cal. 2014), *modified*, 308 F.R.D. 203 (N.D. Cal. 2015).  The same conclusion applies here.

Finally, joinder of the proposed class members is impracticable because the vast majority of proposed class members lack regular access to phones and email, have no access to the internet, and therefore, may be inhibited in bringing individual habeas corpus petitions. *See Kazarov v. Achim*, 2003 WL 22956006, at *4 (N.D. Ill. Dec. 12, 2003).  Most are unrepresented by counsel. *See* Nina Siulc, et al., Vera Institute of Justice, *Improving Efficiency and Promoting Justice in the Immigration System: Lessons from the Legal Orientation Program* (2008) (projecting that an estimated 84% of immigrant detainees nationwide do not have lawyers). Moreover, many detainees may lack familiarity with the English language or with the American legal system, rendering it unlikely they would institute separate suits. 5 *Moore's Federal Practice* § 23.22[1][e] (3d ed. 2013).  Any one of these factors would be sufficient to tip the balance in favor of numerosity in a marginal case.

For the foregoing reasons, the first Rule 23 factor, numerosity, is met in this case.

### 2.      *Common Questions of Law and Fact Exist*

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (Rule 23(a)(2)'s commonality requirement requires plaintiff to "demonstrate that the class members 'have suffered the same injury.'") (citation omitted).  The plaintiff must present a "common contention capable of being proven or disproven in 'one stroke.'" *Brown v. Nucor Corp.*, 785 F.3d 895, 909 (4th Cir. 2015) (quoting *Wal-Mart Stores*, 564 U.S. at 349-50). Plaintiffs do not need to prove that every question in the case will be resolved by class certification; rather, "even a single common question will do" to satisfy the commonality

requirement.  *Wal-Mart Stores*, 564 U.S. at 359 (omitting citations and alterations).  Rule 23's

commonality requirement "has been construed permissively." *Preap v. Johnson,* 303 F.R.D. 566,

585 (N.D. Cal. 2014).

Petitioners, along with the other members of the proposed class, share both the same

common legal contentions and injuries.  The legal questions forming the central question to each

class member's case are: whether persons who have been granted withholding of removal but

remain detained are entitled to release, whether their procedural and substantive due process

rights have been violated by continued detention, and whether Respondents have violated the

rulemaking process and acted arbitrarily and capriciously in enacting their current detention

policy for individuals granted withholding of removal.  The resolution of those questions would

"resolve an issue that is central to the validity of each one of the claims in one stroke." *See Wal-*

*Mart Stores*, 564 U.S. at 350.  *Second*, all class members have suffered the same injury through

the government's unlawful detention of Petitioners.

The government's policy presents common questions that would be resolved for all class

members with a single, common resolution.  There are no material factual variations that would

impede the common resolution of this central question.[4]  *See Manuel v. Wells Fargo Bank, N.A.*,

No. 3:14CV238, 2015 U.S. Dist. LEXIS 109780, *24 (E.D. Va. Aug. 19, 2015) (finding

commonality where "[a]ll class members will have been subjected to this practice"). *Cf. Diaz*,

297 F. Supp. 3d at 626 (commonality still found even where some class members still will not be

---

[4] To the extent that there are variations among class members, for example in that some may be suspected of
having a claim to citizenship or permanent residence in some third country, this does not defeat class
certification. To the contrary, this is precisely why Respondents must engage in a case-by-case analysis of
whether an individual detainee granted withholding of removal may actually be removable to some third
country, rather than imposing a blanket "just detain them all" policy.

released from custody notwithstanding class wide judgment in the case).  As a result, the proposed class satisfies the commonality requirement.

          3.     *Petitioner's Claims Are Typical of the Claims of Other Class Members*

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (internal quotation marks omitted).  To satisfy the requirement of typicality, the claims of the class representatives and the claims of class members need not be perfectly identical or perfectly aligned.  *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).  Instead, the class representatives' "interest in prosecuting [their] own case[s] must simultaneously tend to advance the interests of the absent class members." *Id.*  As one leading treatise observes, "[c]ivil rights cases that challenge uniform practices or policies that have allegedly injured the class representative as well as other class members satisfy the typicality requirement." 5 *Moore's Federal Practice* § 23.24[8][f].

Petitioner's claims here are identical to those of the proposed class members: all three have been granted withholding of removal to any and all countries that were designated by Respondents during their removal proceedings, all three remain improperly detained after the grant of immigration relief, and all three seek immediate release from detention as they are not removable.  The same holds true for each proposed class member.

Petitioners' claims are co-extensive with those of other class members, and prosecuting those claims will advance the interests of the class as a whole. *See Good v. Am. Water Works Co.*, 310 F.R.D. 274, 295 (S.D. W.Va. 2015) (finding satisfaction of typicality requirement because evidence and arguments of class representatives and the class members were closely aligned).

4. *Petitioner Will Adequately Protect the Interests of the Proposed Class and Their Counsel Are Qualified to Litigate this Action*

The requirement of adequacy is met if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that "'the named plaintiff has interests common with, and not antagonistic to, the [c]lass' interests." *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 420 (E.D. Va. 2016). For this reason, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (internal alteration and quotation marks omitted).

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. A minor conflict is insufficient to cause the representatives to be deemed inadequate. "For a conflict of interest to defeat the adequacy requirement, 'that conflict must be fundamental.'" *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003)). "A conflict is not fundamental when . . . all class members share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants]." *Id.* (internal quotation marks omitted). Any purported conflict must be real, not speculative or hypothetical. *Id.*

Petitioners do not have any conflict with the other members of the proposed class. Petitioners seek a determination that they are being unlawfully detained and should be released. Those objectives are identical to the objective of every member of the proposed class. Petitioners do not have interests antagonistic to those of the members of the proposed class, especially considering neither Petitioners nor members of the proposed class are demanding monetary relief.

14

"The adequacy [requirement] also factors in competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20.  "The adequacy of counsel prong of Rule 23(a)(4) asks whether counsel are qualified, experienced and generally able to conduct the litigation and whether counsel will vigorously prosecute the interests of the class."  Newberg on Class Actions § 3:72 (5th ed. 2017).  The nonprofit organizations involved in this case, and the specific counsel representing Petitioners, have extensive experience litigating complex matters and experience litigating class actions, including those involving federal constitutional law and immigration-related habeas corpus actions.  Petitioners' counsel also have significant experience litigating on behalf of indigent individuals seeking relief at the local, state, and federal levels.  *See* Decl. of Simon Sandoval-Moshenberg, Exhibit A; Decl. of Rachel McFarland, Exhibit B; Decl. of Sirine Shebaya, Exhibit C; Decl. of Adina Appelbaum, Exhibit D.  Counsel are committed to vigorously prosecuting the claims on behalf of the proposed class.  Moreover, as explained in detail below, *infra* Section IV, counsel satisfy all of the requirements enumerated in Rule 23(g) for appointment as class counsel.  The adequacy requirement is undoubtedly satisfied.

> 5.     *The Proposed Class is Identifiable by Reference to Objective Criteria*

There is general consensus among the federal courts that a plaintiff need not establish that a class is "ascertainable" for actions brought for injunctive relief pursuant to Rule 23(b)(2).  *See Shelton v. Bledsoe*, 775 F.3d 554, 560-63 (3d Cir. 2015) (collecting cases around the country and stating that ascertainability is not a requirement for 23(b)(2) classes seeking injunctive and declaratory relief ); *Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 621 (C.D. Cal. 2015) (the court did not need to consider ascertainability in motion to certify a class under Rule 23(b)(2)); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015) ("[T]he ascertainability requirement serves little purpose in Rule 23(b)(2) classes . . . . The Court therefore concludes

that the ascertainability requirement does not apply to Rule 23(b)(2) actions."). But to the extent that such a requirement applies here, there is no question that the proposed class is ascertainable.

The Fourth Circuit has held that a class may be "ascertained" by reference to objective criteria. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014); *cf. Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972). "[T]he plaintiff must demonstrate that class members will be identifiable 'without extensive and individualized fact-finding or mini-trials.'" *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 196 (E.D. Va 2015) (quoting *EQT Prod. Co.*, 764 F.3d at 358). The analysis of ascertainability does not require each class member to be identified at the outset of the litigation. 7A Fed. Prac. & Proc. Civ.3d § 1760 (3d ed. 2017). Courts routinely certify classes that include individuals who will enter the class based on future facts. *Parsons v. Ryan*, 754 F.3d 657, 672 (9th Cir. 2014) (certifying class of "[a]ll [inmates] who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices" in Arizona prisons) (internal quotation marks omitted).

This implicit threshold is met in this case. Identifying individuals who become class members can easily be done at the conclusion of immigration proceedings: if an individual was granted withholding of removal to all countries designated, and remains detained in Virginia, he or she is a class member. This information is entirely within the government's control.

### B.    The Proposed Class Also Satisfies the Requirements of Rule 23(b)(2)

Once the prerequisites of Rule 23(a) have been met, a class action may be maintained if one of the requirements of Rule 23(b) are also fulfilled. Fed. R. Civ. P. 23. The requirements of Rule 23(b)(2) apply where the party opposing class certification "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Proc. 23(b)(2). Rule 23(b)(2) is applicable "only where the relief sought is exclusively or predominately

injunctive or declaratory." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 213 (E.D. Va. 2003) (citing *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595 (4th Cir. 1976)).

Rule 23(b)(2) was designed to ensure that large, dispersed groups can still effectively challenge illegal practices or policies. As the Advisory Committee noted when drafting this subsection:

> [It] is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. . . . Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

Fed. R. Civ. Proc. 23(b)(2) Advisory Committee's Note to 1966 amendment. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

This case presents the exact type of action that Rule 23(b)(2) was intended to address. Respondents have created an unlawful policy in which individuals who have been granted withholding of removal will nevertheless be held in detention for ninety days, despite there being no country to which they can be removed.  To remedy this violation of the class members' rights, Petitioners seek a declaration that no statute permits class members' detention, continued detention violates due process rights, and the policy violates the Administrative Procedures Act; and a requirement that all Petitioners and class members be released. This relief—both the

declaration and the corresponding injunction—would resolve the claims of each and every class

member.  The requirements of Rule 23(b)(2) are therefore satisfied.

### C.     In the Alternative, the Class Should Be Certified as a Representative Habeas Class Because Petitioner Meets the Requirements of *United States Ex. Rel. Sero v. Preiser*

The proposed class may also be certified as a representative habeas class pursuant to

*United States ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974).  The Second Circuit in *Sero*

tailored procedures appropriate for habeas class actions, allowing for the case to proceed as "a

multi-party proceeding similar to the class action authorized by the Rules of Civil Procedure"

that was also sensitive to the special circumstances of habeas petitioners. 506 F.2d at 1125.   The

Second Circuit articulated three reasons for why it found class action treatment appropriate in the

habeas context:  (1) the challenge brought by the class was "applicable on behalf of the entire

class, uncluttered by subsidiary issues;" (2) "more than a few [class members] would otherwise

never receive the relief here sought on their behalf," given the likelihood that many of the class

members would be illiterate or lack sufficient education and would not have the resources to

obtain the assistance of counsel in filing individual habeas applications; and (3) a representative

habeas would help achieve judicial economy by avoiding "[t]he considerable expenditure of

judicial time and energy in hearing and deciding numerous individual petitions presenting the

identical issue." *Id.* at 1126.  All of these considerations are present in this case.

*First*, this case addresses the narrow questions of whether the policy of detaining

individuals granted withholding of removal for ninety days violates regulatory requirements, due

process, and rule-making procedures.  This question applies equally to all members of the

putative class.  *Second*, many of the detained individuals are indigent, with limited English

proficiency.  Many of these individuals lack a meaningful understanding of the U.S. judicial

system as well as resources to retain habeas counsel.  As a result, it is highly probable that many

members of the putative class lack the ability to obtain the assistance of counsel in filing

individual habeas petitions.   *Third*, the same concerns about judicial economy at issue in *Sero*

are present here.  Allowing a representative habeas action to proceed in this case would avoid

"[t]he considerable expenditure of judicial time and energy in hearing and deciding numerous

individual petitions presenting the identical issue."  *Sero*, 506 F.2d at 1126.  Thus, all of the *Sero*

factors are satisfied.

## IV.    THE UNDERSIGNED COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23(g)(1), "a court that certifies a class must appoint class counsel." Fed. R.

Civ. Proc. 23(g)(1).  In appointing class counsel, the court must consider four factors:

i.    the work counsel has done in identifying or investigating potential claims in the action;

ii.    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

iii.    counsel's knowledge of the applicable law; and

iv.    the resources that counsel will commit to representing the class.

Fed. R. Civ. Proc. 23(g)(1)(A).

Counsel has performed considerable work in "identifying or investigating potential

claims in the action," having previously litigated habeas challenges regarding immigration

detention and having worked with many individuals who have been granted withholding of

removal but remain detained.  As discussed above in Section III(A)(4), counsel have extensive

experience litigating complex immigrant rights cases, including as lead counsel.  Lastly,

undersigned counsel have already devoted significant resources to maintaining this litigation and

will continue to do so.

## V.      CONCLUSION

For the aforementioned reasons, Petitioners respectfully request that the Court grant

Petitioners' Motion for Class Certification; certify the class, as set forth above; appoint Legal

Aid Justice Center, CAIR Coalition, and Muslim Advocates as class counsel; and order that,

within 15 calendar days of the date of entering such order, Respondents identify all class

members to class counsel, and advise all class members (and their attorneys of record, if any) of

their status as class members in this action.


Date: July 26, 2018                                Respectfully submitted,

                                                   Julio Cesar Sanchez Acosta, Khaled Najjar,
                                                   and Minase Taefateon

                                                   By Counsel

                                                   By: /s/ _____
                                                   Rachel C. McFarland, VSB No. 89391
                                                   *rmcfarland@justice4all.org*
                                                   Simon Sandoval-Moshenberg, VSB No. 77110
                                                   *simon@justice4all.org*
                                                   LEGAL AID JUSTICE CENTER
                                                   6066 Leesburg Pike #520
                                                   Falls Church, VA 22041
                                                   (703) 778-3450
                                                   Fax: (703) 778-3454
                                                      Pro Bono Attorneys for Petitioners

                                                   Adina Appelbaum, VSB. No. 88974
                                                   *adina@caircoalition.org*
                                                   David J. Laing (pro hac vice)
                                                   *david@caircoalition.org*
                                                   Claudia Cubas (pro hac vice application pending)
                                                   *claudia.cubas@caircoalition.org*
                                                   Capital Area Immigrants' Rights (CAIR) Coalition
                                                   1612 K Street NW, Suite 204
                                                   Washington, DC 20006
                                                   (202) 769-5231 (Tel.)
                                                   (202) 331-3341 (Fax)
                                                      Pro Bono Attorneys for Petitioners

Johnathan Smith (pro hac vice application forthcoming)
*johnathan@muslimadvocates.org*
Sirine Shebaya (pro hac vice)
*sirine@muslimadvocates.org*
Muslim Advocates
P.O. Box 66408
Washington, DC 20035
(202) 897-2622 (Tel.)
(202) 508-1007 (Fax)
    Pro Bono Attorneys for Petitioners

## Certificate of Service

I, the undersigned, hereby certify that on this date, July 26, 2018, I caused to be served a true copy of the Motion for Class Certification or Representative Habeas Action on all Respondents-Defendants by registered mail to the following addresses:

Jefferson B. Sessions, III
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Kirstjen Nielsen
Secretary
US Department of Homeland Security
c/o Office of the General Counsel
US Department of Homeland Security,
245 Murray Lane, SW
Mail Stop 0485
Washington, DC, 20528

U.S. Attorney for the Eastern District of
Virginia
Justin W. Williams US Attorney's Building
2100 Jamieson Ave
Alexandria, VA 22314

Thomas D. Homan
Acting Director
US Immigration and Customs Enforcement
c/o Office of the General Counsel
US Department of Homeland Security,
Washington, DC, 20528

Jeffrey Crawford
Warden, Farmville Detention Center
281-433 Waterworks Rd
Farmville, VA 23901

Russell Hott
Director, Washington Field Office
US Immigration and Customs Enforcement
c/o Office of the General Counsel
US Department of Homeland Security,
Washington, DC, 20528

_____/s/_____
Rachel C. McFarland
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Ste A
Charlottesville, VA 22903
434-977-0553
434-977-0558
*Attorney for Petitioners*