**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JULIO CESAR SANCHEZ-ACOSTA, ET AL., *Petitioners-Plaintiffs*, v. JEFFERSON B. SESSIONS, III, ET AL., *Respondents-Defendants*. | Case No. 1:18-cv-00872 |

# MEMORANDUM OPINION

This matter comes before the Court on Respondents' Motion to Dismiss for Failure to State a Claim, Dkt. No. 24. The Court heard oral argument on the motion on August 31, 2018. For the foregoing reasons the Court grants Respondents' motion to dismiss.

## I. Background

Petitioners Julio Cesar Sanchez-Acosta, Khaled Najjar, and Minase Tesfateon, on behalf of themselves and others, petition the Court to issue a Writ of Habeas Corpus ordering their immediate release from custody. Each Petitioner is a noncitizen alien, and at the time of filing each was being held in DHS custody following a withholding of removal.[1] At the time of filing, all Petitioners were within the 90-day removal period window that follows a final order of removal. The central issue in this case is whether, following the withholding of Petitioners' removals, detaining petitioners for a 90-day removal period is justified.

[1] Sanchez-Acosta was ordered removed to El Salvador. This removal was withheld. Najjar was ordered removed to Palestine. This removal was withheld. Tesfateon was ordered removed to Ethiopia, or in the alternative to Eretria. These removals were withheld.

Petitioners make five claims: (1) their detention is in violation of the Immigration and Nationality Act ("INA"), (2) their continued detention violates their procedural due process rights, (3) their continued detention violates their substantive due process rights, (4) the Department of Homeland Security ("DHS") has violated the Administrative Procedure Act ("APA") by changing a long-standing policy of immediately releasing aliens granted withholding of removal without complying with notice-and-comment rulemaking, and (5) this change in DHS policy was arbitrary and capricious.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." FED. R. CIV. P. 8(a)(2); *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, a complaint may survive a motion to dismiss "even if it appears 'that a

recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. Analysis

DHS has statutory authority to remove aliens from the United States, saving specific enumerated exceptions. One such exception to removal is withholding of removal. Once the government has identified a specific country or countries it may remove an alien to, the alien has an opportunity to petition for a withholding of removal to those countries. If it is determined that the alien's "life or freedom" would be threatened in the country designated for removal because of the alien's "race, religion, nationality, membership in a particular social group, or political opinion" the alien may not be removed to that country. 8 U.S.C. § 1231(b)(3)(A). Procedurally, when this occurs, an immigration judge will order removal, but then withhold it. This is an administratively final decision. *See Viracacha v. Mukasey*, 518 F.3d 511, 513-14 (7th Cir. 2008) (holding an alien granted withholding of removal had a final order of removal).

### *A. Petitioners' INA Claim*

Under the INA, once a final order of removal has been granted, the alien shall be removed from the United States within 90 days. 8 U.S.C. § 1231(a)(1)(A). These 90 days are referred to as the "removal period," and "[d]uring the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2).

Petitioners argue that because their removal had been withheld, and because at the time of filing the government had not identified a different country to remove Petitioners to, there was

no operative removal order and therefore there could be no removal period. This would presumably take them out of the purview of § 1231. This is incorrect.

Petitioners have had orders of removal entered against them. Therefore, the plain meaning of the statute supports that Petitioners' detention is governed by § 1231. The title of § 1231 is, "[d]etention and removal of aliens ordered removed." *Id.* § 1231; *see also Almendarez-Torres* v. United States, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of doubt about the meaning of a statute."). According to § 1231, "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." § 1231(a)(1)(A). Although Petitioners' removal has been withheld in regard to certain countries, this does not prevent the government "from removing an alien to a third country other than the country to which removal has been withheld or deferred." 8 C.F.R. § 1208.16(f).[2]

The withholding of removal has no bearing on the validity of the removal order itself. The statute does not make any exceptions for removals that are delayed or logistically difficult. According to the text of the statute, if there is an administratively final removal the removal period begins. Once the removal period begins, the alien "shall [be] detain[ed]." *Id.* § 1231(a)(2). Here, Petitioners are subject to a final order of removal and therefore a 90-day period of detention is mandated by statute.

*B. Petitioners' Procedural Due Process Claim*

[2] Indeed, three days before oral argument, on August 29, 2018, Petitioner Khaled Najjar was notified the government intended to remove him to Jordan. Najjar now has a pending case seeking withholding of removal as to Jordan. Dkt. No. 37.

Petitioners argue that their confinement violates their procedural due process rights. Agreeing with Petitioners on this point would require going against settled precedent. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that no additional procedural due process requirements are needed during the removal period itself, and that no additional procedural due process requirements are necessary to continue to detain an alien for the six months following the removal period.

In *Zadvydas*, the Supreme Court addressed "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment in the United States." *Id.* at 698. Ultimately the Court held "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court conceded that not all removals can be completed within the 90-day removal period, and therefore held that continued detention for six months after the 90-day removal period ends, in order to facilitate removal, is presumptively reasonable. *Id.* at 700-01. After the six-month period expires, an alien may challenge his detention by producing evidence that shows there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The burden then shifts to the Government to rebut that evidence. *Id.*

*Zadvydas* makes clear that the government need not provide Petitioners with additional procedural due process protections during their 90-day removal periods and moreover need not provide Petitioners with additional procedural due process protections in the six months following their removal periods.

*C. Petitioners' Substantive Due Process Claim*

Petitioners further argue that their confinement following the withholding of their removal violates their substantive due process rights because it "shocks the conscience." *United States v. Salerno*, 481 U.S. 739, 746 (1987). Again, here *Zadvydas* controls.

*Zadvydas* not only upholds detention during the 90-day removal period but also holds that six months of detention following the removal period is presumptively reasonable. Through this ruling the Supreme Court implicitly made clear that detention during the removal period does not shock the conscience. For this Court to find otherwise would be to contradict clear precedent. Petitioners' claim on this point fails.

*D. Petitioners' APA Claims*

Petitioners' first APA claim contends that DHS has engaged in improper rulemaking. Under the APA's notice and comment provision, notice of any proposed rulemaking must be published in the Federal Register and the public must be given an opportunity to comment on the proposed rule. 5 U.S.C. § 553(b)-(c). This provision applies only to rules, defined as decrees issued by agencies pursuant to statutory authority and that implement the statute. *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1340 (4th Cir. 1995). A rule "create[s] new rights and [has] the force of law." *Id.* Conversely, no notice and comment is necessary for "general statements of policy." 5 U.S.C. § 553(b)(A).

Petitioners put forward as evidence of their claim three memorandums. The first, from February 9, 2004, is written by Michael J. Garcia, the then Assistant Secretary for ICE and states, "[i]n general it is ICE policy to favor release of aliens who have been granted protection relief by an immigration judge, absent exceptional concerns such as national security issues or danger to the community and absent any requirement under the law to detain." The second is a March 6, 2012 email that was sent on behalf of Gary Mead, the then Executive Associate

Director at ICE for Enforcement and Removal Operations in which Mead reiterates that the policy from the February 9, 2009 memorandum is still in place. The third is a memorandum from February 20, 2017, written by John Kelly, the then Secretary of Homeland Security which states ICE should release aliens from detention when "to the extent consistent with applicable statutes and regulations . . . the alien obtains an order granting relief or protection from removal. Petitioners put these three pieces of evidence forward as proof that DHS had a rule dictating the release of aliens following a withholding of removal.

Petitioners then proffer a correspondence between a Deportation Officer and counsel for Petitioner Sanchez-Acosta. In that email, the Deportation Officer informed counsel that "ICE-ERO Washington Policy is to hold Mr. Sanchez for the entirety of the removal period." Petitioners allege that this email is evidence of an impermissible rule change.

First, it is important to note that an email from a non-supervisory employee responding to a question about an individual detainee is scant evidence for an agency-wide rule change. Further, Petitioners' allegation that DHS had a rule favoring release of aliens ordered removed is severely undercut by the fact that the notice and comment period that applied to 8 C.F.R. § 212, 236, and 246 squarely addressed and rejected the presumptive release of an alien granted a withholding of removal, stating

> Many commenters suggested that the rule should create a presumption of immediate release in the case of an alien granted withholding of removal under either section 241(b)(3) of the Act or under the Convention Against Torture. The Department declines to adopt this suggestion, as the decision to detain an individual granted withholding or deferral of removal requires a fact-specific analysis consistent with the provisions of section 241 of the Act."

Detention of Aliens Ordered Removed, 65 Fed. Reg. 80281-01 (codified at 8 C.F.R. Parts 212, 236, and 241). Given this language it is clear any changes in preferences for detention of

aliens who had been granted a withholding of removal were policy changes, not rulemaking. Petitioner's claim on this point fails.

Petitioners' second APA claim is that DHS' action was arbitrary and capricious. Courts may review final agency actions, 5 U.S.C. § 704, and may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). For an agency action to be considered final, the action "must mark the 'consummation' of the agency's decisionmaking process," and "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177 (1997).

As previously discussed, here Petitioners rely on a statement from a single, non-supervisory Deportation Officer responding to a lawyer's specific question about his client to demonstrate final agency action. This email falls far short of evidence of the consummation of the agency's decisionmaking process. This is not a final agency action and so Petitioners' claim must fail.

**IV. Conclusion**

For the foregoing reasons and for good cause shown, Respondents' Motion to Dismiss for Failure to State a Claim is granted. Petitioners' claims are dismissed with prejudice. A separate Order shall issue.

Liam O'Grady
United States District Judge

October 2, 2018
Alexandria, Virginia